**R. S. E., INC., d/b/a Harrisburg Asphalt Company**

v.

**PENNSY SUPPLY, INC.; Bethlehem Mines, A Division of Bethlehem Steel Corp.; Union Quarries, Inc.; Hempt Brothers, Inc.; Silver Springs Construction Co., Inc.; Kimbob, Inc.; Locust Point Quarries, Inc.; Robert M. Mumma, Sr.; Robert M. Mumma, II; Max C. Hempt; Gerald L. Hempt; Harold A. Maxwell; George F. Hempt; Ronald E. Nye; Robert G. Lescallette; 441 Corporation; Bobali Corporation; Gemini Equipment Co., Inc.; Pennsylvania Supply Company; and Pennsylvania Prestressed Corporation d/b/a Adams County Asphalt.**

Civ. A. No. 77-689.

United States District Court,
M. D. Pennsylvania.

April 14, 1980.

Beckley & Madden, Harrisburg, Pa., Louis R. Koerner, Jr., New Orleans, La., for plaintiff.

Berman, Boswell, Snyder & Tintner, Harrisburg, Pa., for Pennsy Supply, Inc., Robert G. Lescallette, 441 Corp., Bobali Corp., Gemini Equipment Co., Inc., Pennsylvania Supply Co., and Pennsylvania Prestressed Corp. d/b/a Adams County Asphalt.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., and Harrisburg, Pa., for Bethlehem Mines.

Wix, Wenger & Weidner, Harrisburg, Pa., Arnold & Porter, Washington, D. C., for Union Quarries, Inc.

McNees, Wallace & Nurick, Harrisburg, Pa., Marshall, Bratter, Greene, Allison & Tucker, Washington, D.C., for Hempt Brothers, Inc., Silver Spring Const. Co., Inc., Max C. Hempt, Gerald L. Hempt, George F. Hempt and Harold A. Maxwell.

Terry Rose Saunders, Chicago, Ill., for Kimbob, Inc., Robert M. Mumma, Sr., Robert M. Mumma, II, and Ronald E. Nye.

Nauman, Smith, Shissler & Hall, Harrisburg, Pa., John M. Eakin, Mechanicsburg, Pa., for Locust Point Quarries, Inc.

## MEMORANDUM

RAMBO, District Judge.

Before the court is the motion of all defendants except Bethlehem Mines Corporation and Locust Point Quarries, Inc.,[1] for partial summary judgment on the basis that the undisputed facts indicate that the court lacks jurisdiction over the subject matter of plaintiff's claims of price discrimination in the sale of stone aggregate and in the provision of services or facilities in connection with such sales. (Doc. No. 103).

Defendants' motion and supporting brief (Doc. Nos. 103 and 104) are directed at the claims in the *amended* complaint (Doc. No. 27), wherein it is alleged that the defendants sold stone aggregate to plaintiff on terms violating §§ 2(a) and (e) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. §§ 13(a) and (e). (Hereinafter the Act). In response, plaintiff filed a motion to defer ruling on or to dismiss the motion, and at the same time filed a motion for leave to file a *second amended* complaint. (Doc. Nos. 108 and 110). The court permitted plaintiff an additional sixty days within which to complete discovery on the Robinson-Patman jurisdictional issues and to respond to the motion. (Doc. No. 145; Doc. No. 157, p. 2). The court subsequently granted plaintiff's motion to file a second amended complaint. (Doc. No. 150). After the second amended complaint was filed (Doc. No. 151), plaintiff filed a response to the instant motion addressing it in terms of the allegations in the second amended complaint. (Doc. No. 157). Defendants filed a reply in which it was indicated that the matters alleged in the second amended complaint would not alter their position as far as the motion for summary judgment was concerned. (Doc. No. 168). The magistrate, in his report filed on February 15, 1980, recommended that the defendants' motion be granted.

In paragraphs 51 through 62 of its second amended complaint, plaintiff alleges, *inter alia*, that it has been injured in its business and property because certain of the defendants sold stone aggregate to plaintiff at higher prices than they charged plaintiff's competitors, including defendants and non-defendants, in the Harrisburg, Pennsylvania market and elsewhere. (Doc. No. 151). Such sales to plaintiff are alleged to violate § 2(a) of the Act, 15 U.S.C. § 13(a), which provides in pertinent part:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, *where either or any of the purchases involved in such are in commerce,* . . . where the effect of such discrimination may be substantially . . . to *injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination* . . . . (Emphasis supplied).

In paragraph 63 of its second amended complaint, plaintiff alleges that it has been injured in its business and property as a result of defendants' furnishing preferential services or facilities to plaintiff's competitors, including certain of the defendants, in connection with the sale and offering for sale of stone aggregate purchased for resale or use. With regard to this claim, § 2(e) of the Act, 15 U.S.C. § 13(e), provides:

It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers

---

1. See. Doc. No. 103, p. 1, note, and Doc. No. 168, p. 1, note 1.

of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

The background facts, as set forth in plaintiff's brief, indicate that RSE, Inc. (RSE), d/b/a Harrisburg Asphalt Company and Wellsboro Asphalt Company, plaintiff in this action, is the owner of two plants that manufacture asphaltic concrete; one in Harrisburg, Pennsylvania, and the other in Wellsboro, Pennsylvania. In addition to the manufacture and sale segment of asphaltic concrete business, RSE is also engaged in highway construction and repair, as well as general paving. The paving work consists of two types: (1) cold mix (asphaltic cement and stone mixed by a "moto-paving" machine and applied on the road site in the same operation), and (2) hot mix (asphaltic cement and stone are mixed at an asphalt plant and transported "hot" to the work site for application). RSE also sells stone aggregate. All of the foregoing are based at its plant locations in Harrisburg and Wellsboro, although the administrative offices are in Harrisburg, Pennsylvania.

RSE was formed in 1968, and was engaged primarily in cold mix work until 1971–72. At that time, RSE constructed its asphalt plant in Harrisburg, Pennsylvania, because of the high price in the area of asphaltic concrete in the Harrisburg area. The Wellsboro plant was acquired later.

During the four years preceding this litigation, RSE has maintained total sales of approximately $3,000,000 per year, although the tonnage of asphaltic concrete manufactured at its Harrisburg, Pennsylvania, location has steadily slipped from its high in 1973 of 72,000 tons to around 50,000 tons in 1977. The Wellsboro tonnage has maintained a level of approximately 50,000 tons throughout the period of its operation.

RSE owns no source of stone and stone aggregate, although it initially attempted to place its plant at the Fiddler's Elbow Quarry of the D. M. Stoltzfus Company, which also owned quarries at Rheems and Drumgold, Pennsylvania, but was unsuccessful. Stoltzfus subsequently sold out all of its quarries in the Harrisburg area.

In its sale of stone aggregate in Harrisburg, RSE competes with all of the quarries in the *Harrisburg* area, which include all of the defendants in this case, to wit: Pennsy Supply, Inc., Hempt Brothers, Inc., Bethlehem Mines Corporation, Union Quarries, Inc., plus 441 Corporation, Bobali Corporation, and Locust Point Quarries, Inc. 441 Corporation is solely owned by Robert M. Mumma, the President of Pennsy Supply, Inc., who also controls Bobali Corporation. 441 Corporation owns and operates a quarry, formerly owned by General Crushed Corporation, operating and trading as Perry Rock, as well as another inactive quarry, Drumgold, acquired from Stoltzfus as was Fiddler's Elbow by Pennsy Supply, Inc. 441 Corporation also trades as Lebanon Rock from the Annville Quarry of Bethlehem Mines Corporation. Union Quarries, Inc., operates the Bonny Brook Quarry as well as the Rheems Quarry, which was another acquisition from Stoltzfus.

After its asphaltic concrete plant began production in 1972, RSE negotiated a requirements arrangement with Bethlehem Mines Corporation for stone and stone aggregate which it and all other manufacturers require to combine with asphaltic cement in order to manufacture asphaltic concrete or black top. The asphaltic cement or AC 20 utilized by all defendants comes from sources and supplies in Baltimore, Maryland, as does the oil used by RSE for oil and chip road work and moto-paver work.

In the Harrisburg area, a reliable and geographically close source of stone and stone aggregate is crucial to the ability to compete as transportation of stone is limited by economic factors attributable to trucking costs.

**1232**

*The Section 2(a) Claim*

▉ The initial requirement that must be met in § 2(a) claims is that the person be engaged in commerce. It is well settled that the scope of the definition of "in commerce", as used in § 2(a) of the Clayton Act is much more limited than the scope applied in Sherman Act cases. The "in commerce" language of § 2(a) requires that at least one of the alleged discriminatory transactions occurs "in" commerce, rather than merely have an "effect upon" commerce. *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200, 95 S.Ct. 392, 401, 42 L.Ed.2d 378 (1974); *Scranton Construction Co., Inc. v. Litton Industries Leasing Corp.*, 494 F.2d 778, 781 (5th Cir. 1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 774, 42 L.Ed.2d 800 (1975); *Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763, 766 (7th Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 899, 39 L.Ed.2d 102 (1974); *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1143–44 (5th Cir.), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973); *Hiram Walker, Inc. v. A & S Tropical, Inc.*, 407 F.2d 4, 9 (5th Cir.), *cert. denied*, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969); *Willard Dairy Corp. v. National Dairy Products Corp.*, 309 F.2d 943, 946 (6th Cir. 1962), *cert. denied*, 373 U.S. 934, 83 S.Ct. 1554, 10 L.Ed.2d 691 (1963).

▉ To establish the "in commerce" requirement in order to plead a prima facie case under § 2(a), one is required to allege, and support if challenged,

1. That the alleged discriminatory seller *must* be "engaged" in commerce, such that his business activities, *in fact*, cross state lines. *Brosious v. Pepsi-Cola Co.*, 155 F.2d 99 (3rd Cir. 1946).

2. That the alleged discrimination *must* have occurred in the course of such

commerce; the mere fact that the seller *is* engaged in commerce is not enough, the alleged violation must arise out of the *interstate* aspect of the seller's business. *Moore v. Mead's Fine Bread Co.*, 348 U.S. 115 [75 S.Ct. 148, 99 L.Ed. 145] (1954), *reh. denied*, 348 U.S. 932 [75 S.Ct. 334, 99 L.Ed. 731] (1955).

3. That either or any of the purchases that allegedly are discriminatory *must* be in interstate commerce. It is not enough that goods moved from one state to another, the *sale* of the specific goods in question must cross state lines. *Country Maid, Inc. v. Hoseostes [Haseotes]*, 324 F.Supp. 875 (E.D.Pa.1971).

▉ In addition to the "in commerce" requirement as discussed above, § 2(a) requires two additional elements to properly plead a prima facie case. The "favored" customer(s) *must* actually be in competition with the "disfavored" customer, both functionally and geographically, *United States v. E. I. DuPont De Nemours & Co.*, 118 F.Supp. 41, 231 (D.Del.1953), *affd. on other grounds*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956); *Klein v. Lionel Corp.*, 237 F.2d 13 (3rd Cir. 1956), and the price difference between the "favored" and "disfavored" customer(s) *must* actually result in injury at the customer level. *FTC v. Morton Salt Co.*, 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 (1948); *International Film Center, Inc. v. Graflex, Inc.*, 427 F.2d 334 (3rd Cir. 1970).

▉ Defendants state that their motion is directed *solely* at plaintiff's claim of price discrimination causing *second line* injury, based on plaintiff's alleged purchases of one commodity, *stone aggregate*. (Doc. No. 168, pp. 1–2).[2] Defendants argue that the

---

**2.** Plaintiff defines *secondary line* price discrimination as that which takes place between competing customers of a seller under circumstances in which the seller makes disparate sales to two or more customers, one of which was the plaintiff. (Doc. No. 157, p. 25). Defendants state that in a *secondary line case*, the injury is at the customer level and that the requisite impact on competition can occur only where a

discriminatory *interstate* sale was made either to the plaintiff or to one of its competitors, and that plaintiff must carry the burden of showing that it *competed* with the beneficiaries of the interstate price discrimination. (Doc. No. 168, pp. 2–3).

In *Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763 (7th Cir. 1973), it is stated that primary line injury is injury to a

facts alleged in the complaint, as further developed at a hearing on a motion for a temporary restraining order (TRO), and by the deposition of plaintiff's president, establish that the *Harrisburg market area* in which plaintiff and its competitors use stone aggregate purchased from defendants, *lies entirely within* the state of Pennsylvania. More specifically, defendants point out that plaintiff's president testified that it is not economically feasible for producers of stone or of asphaltic concrete who are located in the Harrisburg market area to make sales that "cross the state line" (Rimmer Deposition, Vol. 3 at 89–90); that prohibitively high transportation costs normally limit the movement of such products to points within 25, or at most 30, miles of the point of production (2nd Amended Compl., ¶¶ 30, 31; Rimmer Deposition, Vol. 1, at 30–40, 51–53; Vol. 2 at 25–26, 53–55, 74–76, 162–163; Vol. 3 at 28–29, 88; TRO Hearing at 4); that plaintiff in fact has never sold asphaltic concrete manufactured at its Harrisburg plant across the state line (Rimmer Deposition, Vol. 2 at 87; Vol. 3 at 89–90); that plaintiff's use of stone purchased from defendants is limited to the business it conducts in the Harrisburg market area (2nd Amended Compl., ¶¶ 25, 26, 27; Rimmer Deposition, Vol. 2 at 95–97); and that plaintiff's alleged sales in interstate commerce involving stone purchased from defendants relate only to its construction and repair of *interstate roads* in the Harrisburg market area. (Rimmer Deposition at 81–82).[3]

Defendants argue that on these undisputed facts, it is clear that none of defendants' sales of stone aggregate to plaintiff or its competitors involved discrimination in *interstate* commerce within the meaning of the Act and that the court, therefore lacks jurisdiction over the subject matter of plaintiff's claims. Defendants contend that this is so because § 2(a) of the Act prohibits price discrimination where either or any of the purchases involved in such discrimination are "in commerce." 15 U.S.C. § 13(a). Defendants argue that plaintiff's sole basis for claiming purchases of stone "in commerce" is that stone purchased from defendants was used for construction and repair of *interstate* highways in the *intrastate* market area. This argument, however, has been rejected by the Supreme Court. Defendants state that the "in commerce" requirement is satisfied only by an actual sale across the state line. Defendants further argue that it would not avail plaintiff to show that defendants have made sales of stone to other customers *outside* of Pennsylvania because the undisputed record discloses that the plaintiff does not compete with these out of state purchases. Since § 2(a) reaches only discrimination between competitors, the plaintiff fails to state a claim under § 2(a).

▮ As applied to the *secondary line* discrimination alleged in this case, no § 2(a) claim may be based on the theory that defendants' stone aggregate was purchased for plaintiff's or its customers' use in the construction of interstate highways. *Gulf Oil Corp. v. Copp Paving Co., supra.* Thus, if plaintiff purchased the stone aggregate in intrastate commerce and used it solely in the intrastate Harrisburg market area, it would be immaterial that defendants may have sold stone to their own affiliates or to other competitors of plaintiff in that area at lower prices than those which plaintiff paid. *M.C. Manufacturing Co. v. Texas Foundries, Inc.*, 517 F.2d 1059 (5th Cir. 1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976); *Mayer Paving & Asphalt Co. v. General Dynamics Corp., supra.*

▮ In its brief, plaintiff has advanced little, if any, in the way of disputed *material* facts regarding the specific *secondary line* discrimination to which the defendants' motion is addressed. Plaintiff devotes a large portion of its brief to the general

---

competitor of the discriminator and secondary line injury is injury to one of the customers of the discriminator.

**3.** Copies of the documents to which defendants refer, except the complaint, are appended to the memorandum in support of their motion. (Doc. No. 104).

principles that *would* apply *if* the motion were construed as a motion for summary judgment or as a motion to dismiss for lack of jurisdiction, and cites an overabundance of cases that stand for the proposition that summary judgment should be used sparingly in antitrust cases. (Doc. No. 157, pp. 14–22). The motion presently under consideration is one for summary judgment, as opposed to a motion to dismiss, and as such is made on the basis of facts outside the pleadings going to the jurisdictional issue as disclosed by depositions and other materials. Furthermore, while summary judgment should not be used indiscriminately in antitrust cases, neither should it be read out of antitrust cases. *Harold Friedman, Inc., v. Kroger Co.*, 581 F.2d 1068 (3rd Cir. 1978).

▇ Plaintiff, citing various activities of the parties and activities of non-parties who deal with the parties, argues that these activities show that the parties are engaged generally in interstate commerce. (Doc. No. 147, pp. 23–24). As noted above, however, § 2(a) is not brought into play merely by the fact that the buyer or the seller is generally engaged in interstate commerce. Rather, it is applicable only where a seller who is engaged in commerce, in the course of such commerce, discriminates between different purchasers where either or any of the purchases involved in such discrimination are in commerce. See *Gulf Oil Corp. v. Copp Paving Co., supra.* In the recent case of *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), the Court noted that the "conceptual distinction between activities 'in' interstate commerce and those which 'affect' interstate commerce has been preserved in the cases, for Congress has seen fit to preserve that distinction in the antitrust and related laws by limiting the applicability of certain provisions to activities demonstrably 'in commerce'." *Id.* at 444 U.S. 241, 242, 100 S.Ct. at 509. In support of its holding, the Court cited, among others, its decision in *Gulf Oil Corp. v. Copp Paving Co., supra.*

Plaintiff, apparently in an attempt to show the possibility of the requisite *inter-* *state* purchase of stone aggregate from any defendant by a competitor of the plaintiff, alludes to the fact that certain interstate contractors have been the recipients of favored pricing, and more particularly, that H. J. Williams and S. J. Groves, the latter of which is headquartered outside of the state, received the benefits of disparate and discriminatory sales and pricing, that both were competitors of the plaintiff, and engaged in interstate commerce. (Doc. No. 157, pp. 13, 43).

▇ This argument is somewhat difficult to follow in that no relevant deposition materials in support of these statements are attached to or referred to in plaintiff's brief. With respect to the H. J. Williams and S. J. Groves transactions, the plaintiff's argument is supported merely by broad assertions in its brief, but no factual information has been adduced to support these assertions. See Rule 56(e), F.R.C.P. Furthermore, the fact that Williams and Groves conduct business in other states is immaterial unless plaintiff competed with them. Plaintiff advances no evidence to establish that Williams or Groves bought or utilized defendants' stone aggregate outside of Pennsylvania and used it to compete with plaintiff.

Plaintiff also argues that Harold Maxwell, sales manager of Hempt, testified that Hempt makes direct and regular interstate sales of Pennsylvania 1B stone aggregate to a business entity (Dwyer) in New Jersey by means of rail car shipments at the *same* discriminatory prices charged to plaintiff and to other non-preferred customers. (Doc. No. 157, pp. 8, 28). Plaintiff has brought forth nothing to show that it, in fact, competes with Dwyer in the Harrisburg market (or elsewhere), and indeed, in its brief states that "there might be no competition between the New Jersey customer and plaintiff [which is not admitted because there is no direct evidence of whether or not this customer does in fact compete with plaintiff in Pennsylvania]." (Doc. No. 157, p. 28).

▇ It is of no import whether or not the plaintiff competes with Dwyer, how-

ever, because both the plaintiff and Dwyer paid the *same* allegedly discriminatory prices. Since the prices paid are the same, there is no evidence of *price discrimination* on an interstate transaction, which is the very essence of an alleged § 2(a) violation.

A comprehensive review of the plaintiff's brief and pleadings does not disclose any reference to other transactions that could establish a claim under the Act.

■■ Plaintiff raises other issues, however, that it feels dictate the defendants' motion for summary judgment should be denied. Plaintiff argues that the "in commerce" requirement is satisfied on the basis of a "stream of commerce" theory; namely that "the purchase in interstate commerce of asphaltic cement [4] and other of the ingredients for the manufacture of *asphaltic concrete* provides the 'interstate commerce' requirement for all of the discriminatory transactions with regard to which primary, secondary and indirect primary line competition is alleged." (Doc. No. 157, pp. 43–44). (emphasis added). Plaintiff cites a decision, involving intrastate sales of pasteurized milk processed from out of state raw milk, holding that the finished product (pasteurized milk) was considered to be "in commerce" because of the "rather negligible processing operation which did not change its character appreciably." [5] Plaintiff states that the "mixing of the asphaltic cement and the aggregate did not constitute any more than this type of processing and was not sufficient to interrupt the flow of interstate commerce of the asphaltic cement purchased in Baltimore by both plaintiff and defendants." (Doc. No. 157, pp. 44–45). Plaintiff argues, therefore, that "the liquid asphalt purchases are sufficient to place the sale of *stone aggregate* in the stream of commerce." (Doc. No. 157, p. 46).

Clearly, the *A&P* case is factually distinguishable from the instant case. In *A&P*, both the raw material and the finished product were the same, milk. Here, how-ever, the raw materials are stone, asphalt cement, and other ingredients, which are mixed and treated to produce an entirely different product, asphalt concrete. While the processing of raw milk does not change its character appreciably, the processing of asphaltic concrete entails a rather conspicuous and extensive change in the character of its raw materials, which includes stone aggregate.

As pointed out by the defendants in their reply brief, this argument focuses on purported *primary line* price discrimination in all three phases of defendants' operations, whereas the defendants' motion for partial summary judgment addresses only *secondary line* injury. As such, this argument is totally beside the point, "an irrelevant smoke screen." (Doc. No. 168, p. 1). Nevertheless, the defendants have undertaken to reply thereto. (Doc. No. 168, pp. 9–18). As noted by defendants, in *Gulf Oil Corp. v. Copp Paving Co., supra,* 419 U.S. at 188, 95 S.Ct. at 395, the Court stated:

> Asphaltic concrete is a product used to surface roads and highways. It is manufactured at 'hot plants' by combining, at temperatures of approximately 375° F, *about 5% liquid petroleum asphalt with about 95% aggregates and fillers.* The substance is delivered by truck to construction sites, where it is placed at temperatures of about 275° F. Because it must be hot when placed and because of its great weight and relatively low value, asphaltic concrete can be sold and delivered profitably only within a radius of 35 miles or so from the hot plant.

In view of this, it is unreasonable to conclude that the manufacture of asphaltic concrete is such that the 5% liquid asphalt component has undergone only "a rather negligible processing operation, which did not alter its character appreciably."

■■ Plaintiff also argues at various points in his brief that discovery is continu-

---

4. In their reply brief, defendants state the plaintiff uses the terms "asphaltic cement" and "liquid asphalt" to refer to the "oil" ingredient of asphaltic concrete or blacktop.

5. *Great Atlantic & Pacific Tea Co., Inc., v. FTC,* 557 F.2d 971 (2nd Cir. 1977), *rev'd on other grounds,* 440 U.S. 69, 99 S.Ct. 925, 59 L.Ed.2d 153 (1979).

ing and that the granting of defendants' motion would be premature until plaintiff has had an opportunity to discover matters going to the "in commerce" and "competitive" requirements of the Act. As noted above, however, the court entered an order on May 9, 1978, in which plaintiff was granted an additional 60 days within which to complete discovery on the jurisdiction issue and to file a brief and other materials in opposition to the motion for summary judgment. (Doc. No. 145). After this case was assigned to the magistrate and preliminary work completed on defendants' motion for partial summary judgment, the magistrate noted the "further discovery" argument contained in plaintiff's brief. As a result, a conference was held by the magistrate at which time it was pointed out to counsel that since entry of the court's order, discovery had been continuing. The magistrate inquired as to whether any other matters had been developed that were relevant to the motion for partial summary judgment. The magistrate was advised by counsel that the motion was ripe for decision on the materials and briefs which had previously been filed. Based upon this factual record, the "continuing discovery" argument is not persuasive.

*The Section 2(e) Claim*

 With respect to plaintiff's § 2(e) claims, 15 U.S.C. § 13(e), the Act prohibits discrimination in the furnishing of facilities or services connected with the purchaser's processing, handling, sale, or offering for sale, of commodities purchased for resale. That section has been interpreted to incorporate interstate commerce limitations and to limit its protection to disparities among competing customers. *Elizabeth Arden Sales Corp. v. Gus Blass Co.*, 150 F.2d 988 (8th Cir. 1944); *Thomas v. Amerada Hess Corp.*, 393 F.Supp. 58, 75–76 (M.D.Pa.1975). Since, as noted above, the facts establish that the defendants made no sales of stone aggregate in commerce to plaintiff or its competitors, the § 2(e) claim cannot be sustained.

On the basis of the foregoing, the court finds that the defendants' motion for partial summary judgment should be granted. It should be noted, however, that the partial summary judgment is not granted on the basis of lack of subject matter jurisdiction, for if that were true, the court's order would have no effect. A more precise and accurate basis for requesting a partial summary judgment is that the plaintiff has not pleaded, and supported, the requisites for a claim under §§ 2(a) and 2(e) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. §§ 13(a) and (e). The court has the subject matter jurisdiction to entertain complaints filed alleging violations of §§ 2(a) and (e) of the Act but the undisputed material facts before the court do not show a violation of either section.