### VIRGINIA ACADEMY OF CLINICAL PSYCHOLOGISTS et al.

v.

### BLUE SHIELD OF VIRGINIA et al.

Civ. A. No. 78–0496–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Dec. 2, 1980.

Warwick R. Furr, II, Vienna, Va., Timothy J. Bloomfield, Washington, D. C., for plaintiffs.

Ronald M. Ayers, Roanoke, Va., Gilbert E. Schill, Jr., McGuire, Woods & Battle, Richmond, Va., Joel I. Klein, Rogovin, Stern & Huge, Washington, D. C., Francis J. Prior, Jr., Arlington, Va., for defendants.

## MEMORANDUM AND ORDER

WARRINER, District Judge.

This case comes before the Court on the defendants' Motion to Vacate and Dismiss. The defendants seek dismissal on the ground of mootness.

In *Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia*, 624 F.2d 476 (4th Cir. 1980), the Fourth Circuit Court, reversing this Court, held that the defendants acted in restraint of trade and thereby violated Section 1 of the Sherman Act. The evidence adduced at trial showed that the defendant Blue Shield of Virginia (the "Richmond Plan") had, since 1972, included in its contract a provision allowing payment to psychologists for covered services only when the services were provided under the supervision of a physician and were billed through that physician. The defendant Blue Shield of Southwestern Virginia (the "Roanoke Plan"), until November, 1976, also followed a policy of denying direct payments to psychologists for unsupervised services. At the time of trial, however, most Roanoke Plan contracts permitted direct payments. The Fourth Circuit held in this case that the "bill-through" and physician supervision requirement included in Blue Shield contracts unlawfully restrained competition between clinical psychologists and psychiatrists in areas of treatment where the two professions overlap.[1] The case was accordingly remanded for this Court to fashion appropriate relief.

The defendants submit this action is rendered moot because both defendants have now altered their contracts to conform with Section 38.1–824 of the Code of Virginia, which, the defendants contend, requires direct payments to a psychologist who performs services covered by the subscription contract so long as the psychologist is licensed to perform those services in Virginia. In relevant part, Section 38.1–824 provides that:

> No plan for furnishing prepaid medical and surgical ... services, shall fail or refuse, either directly or indirectly, to allow or to pay for such services rendered by any ... psychologist ... licensed to practice in Virginia ... if the services rendered (i) are services provided for by such contract ... and (ii) are services which the ... psychologist ... is licensed to render in Virginia.

According to the defendants, this statute prohibits the physician supervision and bill-through provision previously included in their contracts.

Section 38.1–824 was enacted by the Virginia legislature in 1973. The Richmond Plan and the Roanoke Plan, in response to the legislation, decided to maintain their policies denying direct payments to psychologists and to challenge the constitutionality of Section 38.1–824. A test case was filed in State court for this purpose, but the action was subsequently voluntarily dismissed. Finally, in 1976, the Virginia State Corporation Commission brought an action against the Richmond Plan to compel compliance with the statute. *Commonwealth of Virginia ex rel. State Corporation Commission v. Blue Cross of Virginia*, Case No. 19829. As a defense in the State Corporation Commission proceeding, the Richmond

---

1. Though the Fourth Circuit found that medical supervision by a family practitioner over a clinical psychologist "defies logic," 624 F.2d at 485, it should be noted that there was no suggestion in this Court's opinion, 469 F.Supp. 552, that such an illogical practice was envisioned by Blue Shield in its practice or its contract. This Court's opinion attempted to make clear at pp. 560–61 that

> the only method of making sure that a physical disorder does not complicate treatment by a clinical psychologist is regular contact between the psychologist's patient and a medical doctor. Whether this be called su-

> pervision, or referral on a regular basis, the medical necessity for this practice in most, if not all cases, is undisputed.
>
> It thus appears that the clinical psychologist is not competitive with the psychiatrist in regard to the treatment of nervous and mental disorders unless the clinical psychologist is working under the supervision of a medical doctor.

The Court thus found a need for an extra measure of supervision so as to "rule out a physical cause of the nervous or mental problem." It is clear that a family practitioner is fully competent to perform this type of supervision.

Plan argued that Section 38.1–824 was unconstitutional. It continued to maintain its position until the matter was finally resolved by the Virginia Supreme Court in *Blue Cross of Virginia v. Commonwealth*, —— Va. ——, 269 S.E.2d 827 (1980).

In *Blue Cross of Virginia v. Commonwealth*, the Virginia Supreme Court held that plans for furnishing prepaid medical and surgical services were required under Section 38.1–824 to make direct payments to psychologists for unsupervised services so long as the services were provided for under the relevant contract and the services were of a type which the psychologist is licensed to render in Virginia. —— Va. at ——, 269 S.E.2d at 834–836. While the plaintiffs contend that Section 38.1–824 leaves open the possibility that psychiatrists could restrict payments to psychologists under the guise of a judgment as to "medical necessity," it is clear from the *Blue Cross* decision that this form of indirect supervision is impermissible under the statute.

As the Virginia Supreme Court emphasized with respect to Section 38.1 ·824

The focus is on *services* for medical care and the availability of such services. As a means to increase the accessibility of such services to the public, the legislature by the 1973 amendment has required defendants to recognize and pay for these *services* rendered by optometrists, opticians, and psychologists, but only if the services are provided for by the contract and if the services are those which those providers are licensed to render in Virginia.

—— Va. at ——, 269 S.E.2d at 836.

An indication of the nature of the services which a psychologist is licensed to render in Virginia is contained in Va.Code Ann. § 54–274(10). In that provision, a "clinical psychologist" is defined as "a psychologist who is competent to apply the principles and techniques of psychological evaluation and psychotherapy to individual clients for the purpose of ameliorating or attenuating problems of behavioral and/or emotional maladjustment." The Virginia Supreme Court has now established that

when psychologists perform services for which they are licensed and such services are within the terms of the contract, a prepaid medical plan may not substitute its own judgment as to the "necessity" of the service rendered. In the Supreme Court's view, that judgment has been taken out of the hands of the defendants by the Virginia legislature's action in adopting Section 38.-1–824.

Edwin P. Munson, Secretary and General Counsel of Blue Shield of Virginia, states in his sworn affidavit dated 5 November 1980 that, following the Virginia Supreme Court's decision on 28 August, Blue Shield has taken the following steps to comply with the Section 38.1–824:

Psychologists claims (including both regular and Federal Employee Programs) are being processed for payment, payments are being made as result of such claims. In fact (with possible exception of some very recent claims), all claims for psychologists services rendered since July 1, 1979, have been processed without regard to whether the services were supervised or billed by a physician.

The former requirement that services of psychologists, in order to be paid, must have been supervised by and billed through a physician, has been completely eliminated, payment limitations are the same for psychologists as for physicians. All psychologists are being assigned provider numbers as claims for their services are being received.

This is a record only of the Richmond Plan's efforts to comply with the statute.

Counsel for the Roanoke Plan submits that at the time of trial, 90% of the Plan's subscriber contracts providing an outpatient mental or nervous condition coverage complied with Section 38.1–824. As of 1 January 1980, the Plan amended all remaining contracts to comply with the statute.

In the case of the Richmond Plan, significantly, the policy of denying direct payment was instituted in 1972, but the change in policy mandated by Virginia law has been made effective only on or after 1 July 1979. This is due to the Virginia Supreme Court's

holding in *Blue Cross* that, as applied to the Richmond Plan, Section 38.1–824 was unconstitutional until 1 July 1979–the effective date of an amendment to a companion statute, Section 38.1–347.1, which cured the constitutional infirmity. —— Va. at ——, 269 S.E.2d at 837–838. As noted previously, the Roanoke Plan began to make direct payments to psychologists under most of its contracts in November, 1976.

The Richmond Plan, in response to the S.C.C. order directing compliance with Section 38.1–824, is in the process of mailing notices to holders of individual and group subscriber contracts which were effective on or after 1 July 1979. A copy of the notice is a part of the record on remand. An examination of the notice reveals that, as a result of the S.C.C. order and the Supreme Court decision, the Richmond Plan added to contracts effective on or after 1 July 1979 a provision including any psychologist within the phrase "non–participating physician" or "non–participating doctor" as used in the contract. The bill–through and physician supervision provision is not specifically excised from subscriber contracts by the terms of the notice.

The plaintiffs argue as an initial matter that the Court is without authority to declare this action moot. They contend that the Fourth Circuit ruled against the defendants on the mootness issue when it remanded this action in that such disposition by the Court of Appeals precludes further inquiry or action by this Court.

The Virginia Supreme Court decision upholding Section 38.1–824 was issued while the defendants' petitions for rehearing and suggestions for rehearing *in banc* in this case were pending before the Court of Appeals. The plaintiffs state that the Fourth Circuit panel was advised of the Virginia Supreme Court decision since defense counsel submitted a copy of it to the appellate court on 29 August 1980. According to the plaintiffs, because the Court of Appeals was aware of the State Court's decision but nonetheless denied the petitions for rehearing and remanded the case, the Court of Appeals must have found that the action was not moot.

The Court finds that the plaintiffs' analysis is overly broad. The Court of Appeals, in remanding this case, did not make a specific ruling as to mootness. Remand would still be required if the Fourth Circuit panel found that some, but not all, of the plaintiffs' claims for relief were rendered moot by the subsequent action of the State Court. This Court will proceed to consider which claims for relief are now moot and which are not. The Court must do so whenever its jurisdiction is challenged on the ground of mootness and there has been no definitive ruling on the point. *See Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 93–94, 99 S.Ct. 2149, 2150, 60 L.Ed.2d 735 (1979); *United States v. Munsingwear*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).

The plaintiffs seek declaratory and injunctive relief. Certain of their claims for injunctive relief are intended to cure the past antitrust violations. Other claims for relief, however, are of a prospective nature. For example, the plaintiffs request that the Court enjoin the defendants from carrying out any plan, policy, or practice which has the purpose or effect of "diminishing competition between psychiatrists and psychologists. . . ." The plaintiffs also seek an order granting them "participating" provider status in the Blue Shield plans. As a final example, the plaintiffs request that they be granted proportionate representation on claims review committees and any advisory committees which Blue Shield may establish to formulate or review policies affecting payments for psychological services.

The issue before this Court at trial and the issue before the Fourth Circuit was whether the defendants as part of their contracts could refuse to pay for services rendered by clinical psychologists unless such services were billed through a supervising physician. The Fourth Circuit underscored its narrow holding, for it noted in concluding its decision that "the elimination of the bill–through provision does not preclude a variety of other cost control and quality control measures by Blue Shield."

624 F.2d at 486. In determining appropriate relief, the Court will consider only what should be done to eliminate the supervision. and bill–through provision and, where possible, to cure anticompetitive effects stemming from that provision.

Turning first to the plaintiffs' request for declaratory relief, the Court finds that this claim is rendered moot by the Virginia Supreme Court's decision in *Blue Cross of Virginia v. Commonwealth, supra.* Consistent with the terms of the Fourth Circuit decision, the plaintiff is entitled only to a judgment declaring that the inclusion of a supervision and bill–through provision in the defendants' contracts is an unlawful practice. However, the supervision and bill–through provision is already prohibited as a matter of State statute. The Virginia Supreme Court has so held in interpreting Section 38.1–824.

Furthermore, the defendant Richmond Plan has been ordered by the State Corporation Commission to bring its contracts into compliance with Section 38.1–824 as of 1 July 1979. The defendant Roanoke Plan, according to the record, has altered all of its contracts to comply with Section 38.1–824. Therefore, there no longer exists "... a substantial controversy, between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The claim for declaratory relief will accordingly be dismissed.

Focusing solely on the supervision and bill–through provision, the Court also finds that the plaintiffs' claim for prospective relief is rendered moot by the combined effect of the Virginia Supreme Court decision and the S.C.C. order. The defendants' decision to discontinue use of the supervision and bill–through provision is not "a mere voluntary cessation." *United States v. Concentrated Phosphate Export Assn., Inc.,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). The defendants are not "free to return to [their] old ways." *United States v. W. T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). They are barred by statute as interpreted by the highest court of the Commonwealth.

As discussed above, the plaintiffs also seek prospective relief above and beyond elimination of the bill–through and physician supervision provision–including a request for an injunction barring the defendants from carrying out any plan which has the purpose or effect of diminishing competition between psychiatrists and psychologists. A decree cannot be entered enjoining conduct about which there has been no complaint, however, nor may the Court enjoin all possible breaches of the law. *Hartford–Empire Co. v. United States,* 323 U.S. 386, 410, 65 S.Ct. 373, 385, 89 L.Ed. 322 (1945); *John B. Hull,· Inc. v. Waterbury Petroleum Products, Inc.,* 588 F.2d 24, 30 (2nd Cir. 1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979).

The plaintiffs' request for sweeping changes in the status of psychologists *vis–a–vis* psychiatrists in the Blue Shield plans are entirely without foundation in the Fourth Circuit opinion. Nowhere in the opinion does the Court of Appeals order a reorganization of the Blue Shield plan infrastructures. Nor is there any indication that the Fourth Circuit felt it necessary to grant psychologists proportionate representation on any Blue Shield committees to protect their interests. Use of the supervision and bill–through provision has been prohibited, and the effects of the past use of the provision can be dealt with without granting the plaintiffs "insider" status in the Blue Shield plans. The Court will not consider any claims for prospective relief.

This case will go forward only on the plaintiffs' claims that the defendants must (1) give adequate notice that their policy of paying for psychologists services only if those services were billed through a physician was in violation of antitrust law; and (2) accept, process, and pay for claims for services rendered by clinical psychologists subsequent to 1 January 1972 provided that such services were within the scope of the psychologists' licenses and were covered under a Blue Shield contract.

The defendants' Motion to Vacate and Dismiss is DENIED.

In accordance with the directions given by the Court at the 5 November hearing, the defendants are GRANTED 3 days from the date of this order within which to submit their pleadings in response to those portions of the plaintiffs' Motion for Entry of Decree which are still pertinent. The plaintiffs are GRANTED 5 days from the filing of the defendants' responsive pleading within which to submit a reply brief.

And it is so ORDERED.