**H.R.H. SERVICE STATION, INC., Plaintiff,**

v.

**EXXON COMPANY, U.S.A., A DIVISION OF EXXON CORP., Defendant.**

**No. 83 Civ. 7655 (SWK).**

United States District Court, S.D. New York.

Aug. 31, 1983.

Konove & Konove, P.C., New York City, for plaintiff; Ronald L. Konove, New York City, of counsel.

Whitman & Ransom, New York City, and John M. Tavormina, Exxon Company, U.S.A., Houston, Tex., for defendant; Paul M. O'Connor, Lee D. Unterman, New York City, of counsel.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Defendant, Exxon Company, U.S.A. ("Exxon"), has moved pursuant to Fed.R. Civ.P. 56 for summary judgment and dismissal of the complaint in this contract action on the grounds that there are no material facts in dispute and that the relevant law clearly supports defendant's position. For the reasons stated below, the motion is GRANTED and the case is DISMISSED.

### —FACTS—

The essential facts in this case are undisputed. Plaintiff, H.R.H. Service Station, Inc. ("H.R.H.") was and, by agreement of the parties during the pendency of this action, is a franchisee of Exxon and operates an Exxon service station in Elmsford, New York. Exxon also owns the service station which plaintiff operates, and leases it to the plaintiff. Under the franchise agreement between the parties, H.R.H. was permitted to sell gasoline purchased from suppliers other than Exxon, but when doing so was required to remove all "Exxon" identification from the pumps from which the Non-Exxon gasoline is sold. On

or about April 21, 1983, the H.R.H. sold a Non-Exxon gasoline without taking the steps required to de-identify the pump from which the Non-Exxon gasoline was sold. This failure to remove the Exxon identification clearly breached paragraph 13 of the franchise agreement.

As a result of this incident, which is termed "misbranding", Exxon notified H.R.H. that they were terminating the franchise agreement and the service station lease, pursuant to paragraph 20(b) of the franchise agreement and paragraph 14 of the service station lease. This termination followed Exxon's formal notification to H.R.H. of the misbranding and a subsequent meeting between the principals of H.R.H. and Exxon representatives, at which the principals of H.R.H. acknowledged the incident, and were permitted to explain the circumstances surrounding the incident. Notwithstanding the explanations proffered on behalf of H.R.H., Exxon terminated the franchise agreement and the service station lease. The plaintiff then commenced this action, seeking an injunction barring Exxon from terminating the franchise and lease.

—Discussion—

The parties agree, and I find, that their relationship is governed by the terms of their various contracts and also by the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*

In passing the PMPA, Congress intended to provide "protection for franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." (S.Rep. No. 731, 95th Cong., 2d Sess. 15 (1978) *reprinted* in [1978] U.S. Code Cong. & Ad.News 873–924). However, this intent must coexist with the need for legitimate terminations for cause if a franchisee violates the franchise agreement. To these dual ends, the PMPA requires continuation of a franchise relationship except in situations defined in section 2802(b). Section 2802(b)(2) provides that

> For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:

> (A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship ... (and) (C) the occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, ...

Section 2802(c)(10) defines "occurrence of an event which is relevant to the franchise relationship" to include "wilfull adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee." The incident in this case appears to fall within both subsections (A) and (C).

In opposition to defendant's motion, plaintiff argues that the incident was not "wilfull," but rather was a single inadvertent occurrence. This position, however, is contradicted by the acknowledged facts that plaintiff was aware of the procedure required to de-identify pumps, knew that failure to do so was a breach of the franchise agreement, and, most important, routinely de-identified one of their pumps from which they regularly sold non-Exxon diesel fuel. Furthermore, the fact that plaintiff, by its own admission had been having financial difficulties and had routinely purchased non-Exxon gasoline to avail itself of the favorable purchase terms not available from Exxon leads me to believe that the misbranding incident in question was wilful. *Haynes v. Exxon Co., U.S.A.,* 512 F.Supp. 543 (E.D.Tenn.1981); *Gilderhus v. Amoco Oil Co.,* 1980–81 Trade Cas. ¶ 63, 648 (D.Minn.1980).

Finally, the plaintiff disputes the good faith conclusion of defendant to proceed with the termination and non-renewal after a discussion of the matter between plaintiff and defendant. These discussions were required by paragraph 20(c) of the franchise agreement, and there is no dispute that the discussion did occur. Plaintiff argues,

however, that defendant demonstrated bad faith with respect to this discussion by having previously entered into negotiations to put a new franchisee into the location occupied by plaintiff. I find this argument unpersuasive. There is no restriction on Exxon's right to engage in such negotiations at any time. Certainly, once Notice of Termination and Non-Renewal was dispatched to plaintiff, it was perfectly reasonable for the defendant to attempt to put a new franchisee into the location, especially if the location was valuable. The alternative was for defendant to await the actual removal of plaintiff from the premises and then commence negotiations, which could have resulted in a substantial period of vacancy. Nothing in either the contracts between plaintiff and defendant or the PMPA requires such a result.

Therefore, it is my finding that there are no material facts in dispute in this case and that the contracts and statutes governing the relationships of these parties clearly and fully support the defendant. Consequently, defendant's motion for SUMMARY JUDGMENT is GRANTED and the case is DISMISSED, without costs and with prejudice.

SO ORDERED.