## LITTLE TOR AUTO CENTER, et al., Plaintiffs,

v.

## EXXON COMPANY USA, Defendant.

### No. 93 Civ. 2832 (VLB).

United States District Court, S.D. New York.

Sept. 13, 1993.

---

Robert S. Lewis, Nyack, NY, for plaintiffs.

Robert Harrison, Exxon Co. USA, Houston, TX, for defendant.

## MEMORANDUM

VINCENT L. BRODERICK, District Judge.

### I

This case, over which this court has jurisdiction under 28 U.S.C. §§ 1331 and 1337, was brought under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* (the "Act" or "Petroleum Act") and involves the question of the conditions, if any, under which a major oil company can terminate a franchisee it suspects of selling, from pumps carrying its name, gasoline derived from other vendors.

Prior to the commencement of this action the parties conducted negotiations for some time. Plaintiffs then initiated this suit. They contemporaneously sought interim relief barring defendant ("Exxon") from terminating plaintiffs' Exxon franchise. Exxon was contacted and an agreement was reached on April 29, 1993 which I adopted as an interim court order barring termination of plaintiffs' pending determination of plaintiffs' motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65 to enjoin such termination.

■ Suits of this kind present the need to reconcile statutory objectives of protecting the investments of gas station franchisees against arbitrary cutoffs with the need of both fuel vendors and consumers to rely on trademarks on gasoline pumps as indicia of those responsible for their contents. Objectives underlying the Lanham Trademark Act (15 U.S.C. § 1051 *et seq*) and the national policy of promoting open markets sought by the Commerce Clause and by the Sherman Act (15 U.S.C. § 1 *et seq*), as well as the provisions and objectives of the Petroleum Act are involved.

■ To fulfill these varying purposes in a context such as this, I must assure that a fuel vendor can protect its trademarks and terminate franchisees who deliberately violate them, at the same time I must not permit use of trademark enforcement as an excuse for termination for other, arbitrary, reasons. Absent any significant indication of trademark infringement, to permit an unjustified termination would be contrary to the mandates of the Petroleum Act. If, as here, there is persuasive evidence of abuse of the franchisor's name through sale of other products under that name, courts cannot permit litigation to be used to perpetuate such conduct or to force a franchisor to deal with a franchisee violating its trademarks.

There is no indication that the franchisor sought to bar open, accurately labelled, sale of competing fuels. There is thus no potential adverse impact on competition in the marketplace due to the requirements imposed by the franchisor which might lead to unenforceability of restrictive provisions or to affirmative antitrust problems in this case.[1] The open marketplace is also harmed if non-performing distributors or franchisees who do not fulfill their function in the marketplace or who engage in harmful deceptive practices such as trademark infringement are frozen in place, effectively precluding availability of their territories to new entrants. See generally J. Palamountain, *The Politics of Distribution* (1955). Presumably in part for this reason, Congress included breach of reasonable and non-anticompetitive provisions of franchise agreements, as well as trademark infringement, among grounds for termination of a gas station franchise.

Plaintiffs have moved for a preliminary injunction seeking the relief originally requested by order to show cause; Exxon has cross-moved for a preliminary injunction barring the plaintiffs from using Exxon trademarks, ejecting plaintiffs from the leased premises and for other relief. I deny both motions.[2]

---

1. Were the franchise agreement to bar franchised service stations from selling gasoline of other vendors even if properly identified, questions of reasonableness and hence enforceability of such a restraint of trade would be presented. See *In re Child World*, 147 B.R. 323 (S.D.N.Y. 1992), *aff'd* 992 F.2d 321 (2d Cir.1993) (Table).

2. Denial of plaintiffs' motion automatically terminates the interim stay granted by consent on April 29, 1993 until the present motion was decided. That interim stay had precluded Exxon from terminating plaintiffs' franchise.

## II

The test for granting a preliminary injunction has been often restated; its core has changed little in recent decades. In order to secure a preliminary injunction, a movant must, barring circumstances not involved here, establish (a) irreparable harm and (b) either (1) likelihood of success on the merits, or (2) fair ground for litigation and a balance of hardships tipping decisively in favor of the movant. *ICN Pharmaceuticals, Inc. v. Khan,* 2 F.3d 484, 490 (2d Cir.1993); *Plaza Health Lab v. Perales,* 878 F.2d 577, 580 (2d Cir.1989); *Jackson Dairy v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979); *Triebwasser & Katz v. AT & T,* 535 F.2d 1356 (2d Cir.1976); see Silberman, *Injunctions by the Numbers: Less Than the Sum of Its Parts,* 63 Chi–Kent L.Rev. 279 (1987).

I do not find that plaintiffs have established either likelihood of success on the merits or a balance of hardships tipping decisively in their favor.

## III

 Exxon's principal ground for termination of plaintiffs' Exxon franchise was use of Exxon trademarks to sell other gasoline. Under 15 U.S.C. §§ 2802(b)(2)(C) and 2802(c)(10), "willful mislabelling or misbranding of motor fuels or other trademark violations" are sufficient cause for termination under the relevant circumstances.

Exxon also relies on sales of other gasoline in ways that might confuse the public, such as placing those other gasolines in pumps with Exxon's name on them, as a ground for termination pursuant to 15 U.S.C. § 2082(b)(2)(A), based on a contractual provision prohibiting such behavior. See *H.R.H. Service Station v. Exxon,* 591 F.Supp. 25, 26 (S.D.N.Y.1983).

The individual plaintiff's initial affidavit of May 26, 1993 states that during November 1992, plaintiffs received a partial load of gasoline which had been refused by a dealer in Montvale, New Jersey, unable to accommodate the load; the truck which made the delivery bore the name of T & R Transportation, an outside hauler, and also conspicuously bore an EXXON logo.

Exxon's territory manager's affidavit of June 14, 1993 states that Exxon never authorized less than full loads to be delivered to plaintiffs on this occasion or otherwise, and that plaintiffs received deliveries in November 1992 of 3,000, 3,000, 3,000 and 3,502 gallons whereas a full load is typically at least 9,000 gallons. This affidavit further asserts that the individual plaintiff conceded that some gasoline in Exxon pumps were "sort of Exxon deliveries."

Although plaintiffs filed a reply affirmation of their attorney and a much briefer one by the individual plaintiff, no invoices or receipts of any kind documenting the sources of the less–than–9,000 gallon deliveries were provided even after those were called into question.[3] No specific sworn denial of the statements attributed to the individual plaintiff was made even after Exxon's manager had asserted that such statements had been made. No assertion is made that non-EXXON gasoline was purchased and put into accurately identified non-EXXON pumps, thereby avoiding trademark infringement or violation of contract.[4]

## IV

 While I deny plaintiffs' motion for a preliminary injunction, I also deny Exxon's motion. Denial of the plaintiffs' motion automatically ends the agreed interim stay of Exxon's ability to terminate the plaintiffs' franchise. No evidence has been submitted indicating any irreparable injury to Exxon if it is required to pursue normal termination procedures should it elect to do so, including resort to state court if such steps as eviction (requested in its motion in this court) were to become necessary. It is my understanding that the station is not now in operation.

---

**3.** This suggests the inference that the fuel may have been purchased with currency, despite the necessity of a business of this type to have ordinary business records for numerous purposes.

See *United States v. Blackman,* 904 F.2d 1250, 1257 (8th Cir.1990).

**4.** See Note 2 *supra.*

Where events with irrevocable effects which are difficult to unscramble are imminent, quick resolution on the merits can at times be crucial to the interests of all involved. That has already been achieved here insofar as Exxon's current ability to terminate plaintiffs' franchise is concerned.

Further relief at present is not exigent. This is not a case where, as in certain corporate control controversies, judicial relief to be meaningful must be complete and immediate as outlined in *Piper v. Chris–Craft Industries*, 430 U.S. 1, 42, 97 S.Ct. 926, 949–50, 51 L.Ed.2d 124 (1977), quoting *Electronic Specialty Co. v. International Controls*, 409 F.2d 937, 947 (2d Cir.1969); see Laycock, *The Death of the Irreparable Injury Rule*, 103 Harv.L.Rev. 687 (Jan. 1990).

There is obviously no risk that misconduct by plaintiffs will put Exxon out of business, which might suffice to show irreparable injury. *John B. Hull, Inc. v. Waterbury Petroleum Products*, 588 F.2d 24, 29 (2d Cir.1978), *cert. denied* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979).

I have considered Exxon's application for injunctive relief against trademark infringement, but at this juncture perceive no indication that whatever wrongdoing may have occurred is continuing or is likely to recur, given Exxon's ability to terminate the franchise.

V

I have considered combining the parties' motions for preliminary injunctions with an expedited trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). This would, however, compel continuance of the franchise for what might be a substantial period of discovery, during which risk of trademark infringement might arise or the property be vacant with harm to all parties.