Kenneth J. HAMPTON d/b/a Hampton Vending Supply, Plaintiff-Appellee,

v.

GRAFF VENDING CO., et al., Defendants-Appellants.

No. 74–2809.

United States Court of Appeals, Fifth Circuit.

July 21, 1975.

Earl Luna, Thomas V. Murto, III, Dallas, Tex., for defendants-appellants.

James L. Branton, San Antonio, Tex., for plaintiff-appellee.

Before GODBOLD, Circuit Judge, SKELTON, Associate Judge,* and GEE, Circuit Judge.

GEE, Circuit Judge:

On an earlier appeal of this Robinson-Patman suit, we found that Hampton had established a prima facie case of primary-line price discrimination in chewing-gum sales against Graff Vending Company and remanded for consideration of injunctive relief and attorney's fees.[1] The district court granted prayers for both. Before us again, Graff questions our jurisdiction, arguing that Hampton has failed to prove at least one purchase or sale "in commerce."[2] This point was not raised in the earlier appeal, which, of course, is not fatal to our consideration here. And, additionally, the law in this circuit relating to Robinson-Patman jurisdiction changed between the first appeal and this.

In order to show jurisdiction in a suit brought under § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), the plaintiff must allege and prove:

(1) That the defendant is engaged in commerce;

(2) that, in the course of such commerce, the defendant has discriminated in price between different purchas-

---

\* Of the U. S. Court of Claims, sitting by designation.

1. See Hampton v. Graff Vending Co., 478 F.2d 527 (5th Cir. 1973) for a complete statement of the facts.

2. The extent to which the trial court considered the jurisdictional issue raised by Graff after remand is unclear. Graff pointed to the problem during hearing and in motion for supersedeas; however, the court apparently felt bound to address only injunctive relief and attorney's fees pursuant to direction of our court. The court's order granting a permanent injunction and attorney's fees posits jurisdiction in conclusory terms.

ers of commodities of like grade and quality;

(3) that *"either or any of the purchases involved in such discrimination are in commerce"*; and

(4) that there is likely to be a severe, adverse effect on competition.

Cliff Food Stores, Inc. v. Kroger, Inc., 417 F.2d 203, 208 (5th Cir. 1969). While at the time of the previous appeal of this case it was thought that use of profits from interstate activities to finance a local price cut was sufficient to satisfy the "in commerce" requirement of the Act, Littlejohn v. Shell Oil Co., 456 F.2d 225 (5th Cir. 1972), it is clear now that it is not. Nor does it suffice to show only that the defendant's activities had a substantial impact on interstate commerce.[3] The rule, recently stamped with the Supreme Court's imprimatur, Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 201, 42 L.Ed.2d 378, 390, 95 S.Ct. 392, 401 (1974), calls for a showing that at least one of the two transactions allegedly demonstrating the discrimination is *in interstate commerce.* Littlejohn v. Shell Oil Co., 483 F.2d 1140, 1144 (5th Cir.) (en banc), cert. denied, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973).

In order to place Hampton's arguments in context, we reiterate some of the facts related in our earlier opinion. Graff is mainly a wholesaler of gum with its home office in Dallas, Texas. Graff maintains outlets elsewhere, including San Antonio and Houston in Texas and Oakland in California. Most of Graff's gum comes from W. R. Grace Co. of Chicago, Illinois (Leaf). Hampton competes on the wholesale level with Graff, basically in the San Antonio, Texas area. The bone of contention in the case was a Leaf gum sale Graff instituted only in Houston and San Antonio. The sale was made feasible when Leaf agreed to lower prices to Graff for these two areas if the entire reduction would be passed along.

Hampton argues that he has twice cleared the jurisdictional hurdle by establishing (1) that the regular listed price for Leaf was in effect at Graff's outlet in Oakland, California, and (2) that the sales of Leaf gum at reduced rates in Houston and San Antonio were still in the flow of interstate commerce which commenced with the shipment from Graff's supplier of Leaf located in Chicago, Illinois.

The testimony shows, as we noted on the first appeal of this case, that Graff was "selling" Leaf gum at the regular listed price in Oakland, California.[4] However, nothing was shown beyond this general statement. No evidence of an actual sale, as opposed to an advertised offer, made to a specific purchaser at the listed price in Oakland, California, was introduced, nor was there evidence to establish that the California sales, assuming such were adequately proven, were in the flow of commerce. Generally, if it can be shown that goods shipped from outside the state are still within the "practical, economic continuity"[5] of the interstate transaction at the time of the intrastate sale of the goods, that latter sale will be considered "in commerce" for purposes of the Robinson-Patman Act. Our court has noted three instances in which flow of commerce would be established:

[W]here they are purchased by the wholesaler or retailer upon the order of a customer with the definite intention that the goods are to go at once to the customer; where the goods are

---

3. Although it would were the action brought under the Sherman Act. *See*, e. g., St. Bernard General Hospital, Inc. v. Hospital Service Ass'n of New Orleans, Inc., 510 F.2d 1121 (5th Cir. 1975). The Supreme Court and our circuit have consistently preserved the distinction between the broad jurisdictional provision of the Sherman Act and the more restrictive, precise provision of the Robinson-Patman Act. Gulf

Oil Corp. v. Copp Paving Co., 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974); Lehrman v. Gulf Oil Corp., 464 F.2d 26, 36–37 (5th Cir.), cert. denied, 409 U.S. 1077, 93 S.Ct. 687, 34 L.Ed.2d 665 (1972).

4. The earlier panel made no finding concerning the "in-commerce" requirement.

5. *Cf.* Gulf Oil Corp. v. Copp Paving Co., *supra.*

purchased by the wholesaler or retailer from the supplier to meet the needs of specified customers pursuant to some understanding with the customer although not for immediate delivery; and where the goods are purchased by the wholesaler or retailer based on anticipated needs of specific customers, rather than upon prior orders or contracts. *See* Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.

Walker Oil Co. v. Hudson Oil Co., 414 F.2d 588, 590 (5th Cir. 1969), cert. denied, 396 U.S. 1042, 90 S.Ct. 684, 24 L.Ed.2d 686 (1970). See also Cliff Food Stores, Inc. v. Kroger, Inc., *supra*; Foremost Dairies, Inc. v. FTC, 348 F.2d 674, 677–78 (5th Cir.) cert. denied, 382 U.S. 959, 86 S.Ct. 435, 15 L.Ed.2d 362 (1965) (processing of fluid milk negligible in terms of time and chemical change, fairly predictable demands of specific retail customers). Here, however, we are not shown from what location Oakland received Leaf gum, under what circumstances or for what purposes the gum was shipped to Oakland, nor to whom it was or was to be sold.

 Similarly, nothing in the record shows that the intrastate sales made by Graff in Texas were still in the flow of commerce. While it is clear that Graff received the gum from Illinois, this is not determinative of whether a later sale by Graff to a retailer is in interstate commerce. Hiram Walker, Inc. v. A. & S. Tropical, Inc., 407 F.2d 4, 9 n. 7 (5th Cir.), cert. denied, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969). Hampton's evidence goes no further than this initial step. In fact, rather than supporting a finding of flow of commerce, testimony in the record indicates that the Leaf gum came to rest in Graff's Texas warehouses and was held there for whatever customers happened by, whether those customers lived in the immediate area of the particular warehouse or not. For example, one San Antonio operator stated he often made purchases in Houston. We do not think that the fact that Graff was able to induce Leaf to lower its price to Graff and so facilitate Graff's reduction of price is a distinguishing factor. There still is no evidence of the circumstances governing particular shipments of Leaf gum to Graff.

Ordinarily we would reverse and remand for dismissal of the case; however, given the change in the law of our circuit during the prosecution of Hampton's suit, we think he should be allowed his day in court guided by the now well-settled law governing Robinson-Patman jurisdiction. Accordingly, we remand to the district court for Hampton to establish jurisdiction, if he can.

Remanded.