JOHN B. HULL, INC., The Sandmeyer Oil Company, Community Petroleum Products, Inc., and Dutchess Auto Co., Plaintiffs-Appellees,

v.

**WATERBURY PETROLEUM PRODUCTS, INC., Defendant-Appellant.**

No. 21, Docket 78–7136.

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1978.

Decided Nov. 30, 1978.

Michael F. Dowley, Middletown, Conn. (Dzialo, Pickett & Allen, P. C., Middletown, Conn.), for appellant.

James R. Hawkins, II, Stamford, Conn. (Cummings & Lockwood, Stamford, Conn.), for appellee.

Before SMITH, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from an order in a civil antitrust action granting a preliminary in-

junction against defendant's pricing practices for heating oil, entered in the United States District Court for the District of Connecticut, T. Emmet Clarie, *Chief Judge.* We find the scope of the order somewhat broader than justified, modify the order and, as modified, affirm.

This controversy involves five companies engaged in the sale of heating oil (also known as "fuel oil Number 2") to homes, schools and some businesses in an area referred to as the Northwest Corner, which encompasses parts of northwest Connecticut, southwest Massachusetts and the adjacent area of New York.[1] On one side of the controversy are John B. Hull, Inc., The Sandmeyer Oil Company, Community Petroleum Products, Inc., and Dutchess Auto Company ("the plaintiffs"). Together they account for a substantial portion of the sales of heating oil in the Northwest Corner.[2] On the other side is Waterbury Petroleum Products, Inc. ("WPP"), which has about 2% of the market in the Northwest Corner.

WPP originally operated exclusively in Waterbury, Connecticut, outside of the Northwest Corner. In 1975, it purchased the assets of the Canaan Oil Company, located in Canaan, Connecticut, and thereby expanded its business into the Northwest Corner. For reasons unrelated to this action, all three former employees of the Canaan Oil Company subsequently left WPP and began working for one of its competitors. As a result, WPP started to lose customers in the Northwest Corner. At about the same time, WPP lost the use of its Canaan storage facility in a dispute over the ownership of the property.

In September 1976, WPP sought to reverse its declining fortunes in the Northwest Corner by lowering the price of heating oil there to 35.9 cents per gallon. WPP continued to sell its heating oil in the Waterbury area at a price of 40.9 cents per gallon. Over the next four months, increases in the cost of obtaining oil caused WPP to raise the price charged to Waterbury customers to 48.9 cents per gallon. During the same period, WPP only increased its price in the Northwest Corner to 39.9 cents per gallon.

WPP's new pricing policy proved successful in recapturing old customers and acquiring new ones, some of whom previously purchased oil from the plaintiffs. As might be expected, the plaintiffs were not pleased with the loss of customers that WPP's pricing policy produced. Thus they commenced this action against WPP, alleging that its pricing policy constituted unlawful price discrimination in violation of § 2(a) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a). The plaintiffs sought preliminary and permanent injunctive relief against WPP's pricing policy, as well as trebled damages for the losses which they sustained as a result of that policy.

The district court, pursuant to 28 U.S.C. § 636, referred the matter to a magistrate, who conducted an evidentiary hearing to determine whether a preliminary injunction should be issued. The hearing lasted five days, after which the magistrate submitted his recommended ruling, including specific findings of fact. The district court "adopted, ratified and confirmed" the recommended ruling and issued an order granting the preliminary injunction.

WPP appeals from that order, arguing that the district court lacked subject matter jurisdiction, that there was manifest error in the issuance of the injunction, and that the injunction as issued is too broad and

---

1. The parties stipulated that the Northwest Corner includes the following locations: Sharon, Lakeville, Canaan, North Canaan, East Canaan, Salisbury, Falls Village, Norfolk, Lime Rock and Cornwall in the State of Connecticut; Millerton in the State of New York; and Great Barrington and Sheffield in the State of Massachusetts.

2. About twenty million gallons of heating oil are consumed annually in the Northwest Corner. The plaintiffs collectively sell more than ten million gallons of heating oil annually; however, it is not clear from the record what portion of those sales are made in the Northwest Corner. It is clear that the plaintiffs service a larger share of the market than does the defendant, Waterbury Petroleum Products, Inc.

should be modified. We find no merit in appellant's first two contentions, but agree that the relief granted was too broad and therefore modify the preliminary injunction and, as modified, affirm.

■ WPP contends that the district court lacked jurisdiction of the subject matter of this action because there was no proof of injury to competition. We of course must consider this argument although it was not raised below, *Woodward v. D. H. Overmyer Co.*, 428 F.2d 880, 882 (2d Cir. 1970), *cert. denied*, 400 U.S. 993, 91 S.Ct. 460, 27 L.Ed.2d 441 (1971), as jurisdiction over the subject matter provides the basis for the court's power to act, and an action must be dismissed whenever it appears that the court lacks such jurisdiction. Fed.R.Civ.P. 12(h)(3).

WPP cites several cases from the Fifth Circuit for the proposition that proof of injury to competition is a jurisdictional requirement under the Robinson-Patman Act. This element was explicitly described as a prerequisite to jurisdiction in *Hampton v. Graff Vending Co.*, 516 F.2d 100, 101–02 (5th Cir. 1975), which relied on *Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 208 (5th Cir. 1969). In neither case, however, was the existence of an adverse effect on competition in issue. Moreover, the court in *Cliff Food Stores* did not speak in terms of jurisdiction, but rather in terms of the proof necessary to "maintain an action." [3]

■ We know of no other court which has adopted the position taken in *Hampton*. Commentators have concluded that proof of injury to competition is not a jurisdictional requirement. *See, e. g.*, 16B J. Von Kalinowski, *Business Organizations: Antitrust Laws and Trade Regulation*, ch. 23; Rowe, *Discriminatory Sales of Commodities in*

*Commerce: Jurisdictional Criteria Under the Robinson-Patman Act*, 67 Yale L.J. 1155, 1156 (1958). We respectfully decline to follow the Fifth Circuit's dictum. Proof of injury to competition is not a jurisdictional prerequisite, but instead is part of a Robinson-Patman plaintiff's substantive burden in demonstrating a violation of the Act.[4]

■ The district court applied the proper standard for the issuance of a preliminary injunction, requiring the plaintiffs to demonstrate "either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973). (Emphasis in original.) The court determined that the plaintiffs had satisfied both prongs of this test. Our review is limited to a consideration of whether there was an abuse of discretion, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), or a clear mistake of law, *414 Theater Corp. v. Murphy*, 499 F.2d 1155, 1159 (2d Cir. 1974), in the district court's application of the *Sonesta* test.

■ 15 U.S.C. § 13(a) requires a plaintiff to show that a defendant, (1) who was engaged in commerce, (2) has discriminated in price between purchasers of commodities (3) of like grade and quality, (4) where the effect may be substantially to lessen competition. WPP admitted that it was engaged in commerce and that the sales in question took place in commerce. The district court adopted the magistrate's findings of fact that the other three elements were also

---

**3.** The court said:

To maintain an action under section 13(a) the plaintiff must allege and prove, inter alia: (1) That the defendant is engaged in commerce; (2) that, in the course of such commerce, the defendant has discriminated in price between different purchasers of commodities of like grade and quality; (3) that *"either or any of the purchases involved in*

*such discrimination are in commerce"*; and (4) that there is likely to be a severe, adverse effect on competition.
417 F.2d at 208. (Emphasis in original.)

**4.** As the discussion below will show, the plaintiffs made a showing of probable effect on competition sufficient to satisfy any jurisdictional requirement, if one had existed.

satisfied. We conclude that the district court acted well within its discretion in finding a probability that the plaintiffs ultimately will succeed on the merits of their claim.

Price discrimination, for the purposes of the Robinson-Patman Act, is "merely a price difference." *FTC v. Anheuser-Busch, Inc.*, 363 U.S. 536, 549, 80 S.Ct. 1267, 4 L.Ed.2d 1385 (1960). WPP concededly charged different prices to different customers at the same time. The district court found that WPP was selling a commodity of like grade and quality in Waterbury and the Northwest Corner. In so finding, the court rejected as factually unsupported WPP's contention that the products sold in the two areas were different in that the price charged in Waterbury purportedly included 24-hour burner service and easier credit terms, not offered in the Northwest Corner. The court also rejected WPP's defense that the price difference was justified by a difference in the costs of providing heating oil to the two areas. The court characterized the testimony of WPP's expert as "beyond the realm of believability" and concluded that WPP was operating at a loss in the Northwest Corner as a result of its lowered price. While we offer no opinion as to the eventual resolution of these issues, we find the district court's conclusions to be not clearly erroneous on the basis of the existing record.

The district court's conclusion on the issue of anticompetitive effect also is supported by the record. In this circuit, proof of price discrimination satisfies a plaintiff's initial burden of showing injury to competition and shifts to the defendant the burden of proving that its acts did not substantially lessen competition. *Samuel H. Moss, Inc. v. FTC*, 148 F.2d 378, 379 (2d Cir.), *cert. denied*, 326 U.S. 734, 66 S.Ct. 44, 90 L.Ed. 438 (1945). WPP did not discharge this burden. Injury to competition may also be shown by proof of predatory intent, *Utah Pie Co. v. Continental Baking Co.*, 386 U.S. 685, 696–98, 702, 87 S.Ct. 1326, 18 L.Ed.2d 406 (1967), which can be inferred from proof of sales below cost. *Id.*, at 696 n. 12. The district court's finding that WPP sold below cost was justifiable.

WPP argues that because it has only 2% of the Northwest Corner market and is not a powerful nationwide corporation, while the plaintiffs hold a much larger share of the market, there can be no anticompetitive effect of the kind contemplated by the Robinson-Patman Act. This contention runs counter to the language of *Utah Pie*, 386 U.S. at 702–03 n. 14, 87 S.Ct. at 1336, where the Supreme Court said:

Nor does the fact that a local competitor has a major share of the market make him fair game for discriminatory price cutting free of Robinson-Patman Act proscriptions. "The Clayton Act proscription as to discrimination in price is not nullified merely because of a showing that the existing competition in a particular market had a major share of the sales of the product involved." [Citation omitted.]

We next consider whether the plaintiffs demonstrated the possibility that irreparable injury would result if temporary injunctive relief were not granted. The district court found two elements of irreparable harm: (1) the "extreme likelihood" that Dutchess Auto Company ("Dutchess") would go out of business, and (2) the loss to "the goodwill and reputations" of the plaintiffs. Although we are not sure that we would have come to the same conclusion as did the district court, that is not the standard by which its determination must be judged. We cannot say that we have a "definite and firm conviction that a mistake has been committed." *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We conclude that the finding of irreparable injury finds support in the record and relief based upon it did not constitute abuse of the court's discretion.

The district court determined that Dutchess was in danger of losing many customers to whom it had given discounts in an attempt to match WPP's price, and that, if it lost those customers, it would probably be forced out of the heating oil business. A threat to the continued existence of a busi-

ness can constitute irreparable injury. *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir. 1970). Although Dutchess might have done a more thorough job of proving the possibility that it would go out of business, we cannot say that the court's finding was without some evidentiary support.

■ The finding of irreparable harm through loss of goodwill and reputation raises a more difficult issue. WPP concedes that loss of goodwill in certain circumstances can constitute irreparable injury, as in *Interphoto Corp. v. Minolta Corp.,* 417 F.2d 621, 622 (2d Cir. 1969), and *Supermarket Services, Inc. v. Hartz Mountain Corp.,* 382 F.Supp. 1248 (S.D.N.Y.1974). However, it contends on appeal that the loss of goodwill claimed here amounts to nothing more than a claim that the plaintiffs are losing customers to WPP's lower price. WPP argues that to issue a preliminary injunction on that basis would mandate a preliminary injunction in every price discrimination case, thereby destroying the preliminary injunction's status as an extraordinary remedy.

WPP's argument has considerable force. Those cases in which loss of goodwill previously has been held to constitute irreparable injury have involved the termination of franchise or distributorship relationships. *See, e. g., Jacobson & Co. v. Armstrong Cork Co.,* 548 F.2d 438 (2d Cir. 1977); *Interphoto Corp. v. Minolta Corp., supra,* 417 F.2d 621; *Bergen Drug Co. v. Parke Davis & Co.,* 307 F.2d 725 (3d Cir. 1962); *Carlo C. Gelardi Corp. v. Miller Brewing Co.,* 421 F.Supp. 233 (D.N.J.1976); *Supermarket Services, Inc. v. Hartz Mountain Corp., supra,* 382 F.Supp. 1248. In that situation, the plaintiff is deprived totally of the opportunity to sell an entire line of merchandise and may incur injury to its goodwill and reputation "as a dependable distributor which offers a full line" of goods. *Supermarket Services, Inc. v. Hartz Mountain Corp.,* 382 F.Supp. at 1256. That kind of

loss of goodwill is quite different from the loss of a customer that results simply from a competitor's lower price. *Cf. Automatic Radio Manufacturing Co. v. Ford Motor Co.,* 390 F.2d 113, 116–17 (1st Cir.), *cert. denied,* 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968) (goodwill resulted from "mercurial market" geared to price and demand for personnel rather than from attractiveness of trade name). Every Robinson-Patman plaintiff must prove that the defendant's price discrimination has caused damage to him, *Perkins v. Standard Oil Co.,* 395 U.S. 642, 648, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969), and the most common form of damage to a plaintiff competing seller would likely be lost profits because of a loss of customers. We would have serious doubts about the wisdom or propriety of finding irreparable injury to exist every time that the defendant's lower price has attracted customers.

Here, however, WPP has waived the argument which it now seeks to raise on appeal. 28 U.S.C. § 636(b)(1) provides that any party who objects to the magistrate's proposed findings and recommendations "may serve and file written objections . . . as provided by rules of court." The United States District Court for the District of Connecticut has adopted Rules for United States Magistrates. Rule 2 requires that "[a]ny party wishing to object must . . . serve on all parties, and file with the Clerk, written objection which shall *specifically identify* the ruling, order, proposed findings and conclusions, or part thereof to which objection is made and *the factual and legal basis for such objection.*" (Emphasis added.) WPP objected to the magistrate's conclusion on the grounds that any loss of goodwill resulted from fair competition and that the scale of the alleged loss was too small to warrant preliminary injunctive relief.[5] WPP did not, however, "specifically identify the . . . legal basis" on which it now seeks to challenge the magistrate's conclusion. This failure to satisfy

---

**5.** The magistrate clearly found against WPP on the former ground. The latter ground might have weight if we were applying the "balancing

of hardships" test, but it does not rebut the contention that a possibility of irreparable injury existed.

Rule 2 resulted in this argument not being considered by the district court and thus it has not been properly preserved for appeal. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Wilkerson v. Meskill*, 501 F.2d 297, 298 (2d Cir. 1974).

■ Although we agree that the district court acted within its discretion in determining that a preliminary injunction should be granted, we believe that the injunction entered was too broad and should be modified. The plaintiffs' complaint sought relief restraining WPP from selling heating oil in the Northwest Corner at a price below that which it charged in Waterbury. The magistrate's recommended ruling proposed a preliminary injunction which would achieve that result by requiring WPP to charge the same price in both areas. The district court's order,[6] however, imposed a number of additional restrictions which exceeded the relief requested. The injunction prohibits WPP from granting any discounts which are not cost justified in either the Northwest Corner or Waterbury. None of the plaintiffs, however, competes with WPP in Waterbury, and no complaint has been made as to WPP's pricing policy there. "[A] decree cannot enjoin conduct about which there has been no complaint," *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1180 (3d Cir. 1976), nor may it "enjoin 'all possible breaches of the law.'" *Hartford-Empire Co. v. United States*, 323 U.S. 386, 410, 65 S.Ct. 373, 385, 89 L.Ed. 322 (1945) (footnote omitted). Furthermore, the injunction's emphasis on allowing only cost justified discounts could be construed to prohibit WPP from offering discounts in order to meet those offered by its competitors, all of whom concededly grant discounts which may or may not be cost justified. The injunction therefore should be modified so as to regulate discounts only in the Northwest Corner and to make clear that WPP may engage in pricing policies that are allowed under the "meeting competition" defense afforded by 15 U.S.C. § 13(b).[7] The burden of proving the justifi-

---

6. The injunction provided, in relevant part:

It is therefore:

ORDERED that the defendant, Waterbury Petroleum Products, Inc., shall establish a single price for sales of fuel oil Number 2. Nothing herein shall prohibit the defendant from granting discounts from such base price, so long as such discounts are cost justified. Examples of such permissible cost justified discounts are discounts relating to tank size and annual volume consumed by the account (including multiple accounts). Any such discounts must be offered uniformly to all customers of Waterbury Petroleum Products, wherever located. Specifically, no discount shall be granted to any of Waterbury Petroleum Products' customers which purports to be for payment within a specified period of time or Waterbury Petroleum Products' non-provision of burner service. Nothing herein shall affect the prices which defendant shall charge its customers where such prices have been or will be hereafter established by contract following public competitive bidding. Subject to the foregoing, the prices which the defendant shall charge its customers for fuel oil Number 2 shall be solely a matter of defendant's business judgment. This injunction mandates full compliance with Section 2(a) of the Robinson-Patman Act on the part of Waterbury Petroleum Products, Inc. . . .

7. The injunction shall be modified to read as follows:

It is therefore:

ORDERED that the defendant, Waterbury Petroleum Products, Inc., shall establish a single base price for sales of fuel oil Number 2. Nothing herein shall prohibit the defendant from granting discounts from such base price, so long as any discounts given to customers in the Northwest Corner are cost justified. Examples of such permissible cost justified discounts are discounts relating to tank size and annual volume consumed by the account (including multiple accounts). No discount shall be granted to any of Waterbury Petroleum Products' customers in the Northwest Corner which purports to be for payment within a specified period of time or for Waterbury Petroleum Products' non-provision of burner service. Nothing herein shall affect the prices which defendant shall charge its customers where such prices have been or will be hereafter established by contract following public competitive bidding. Any conduct which is permissible under the "meeting competition" defense afforded by 15 U.S.C. § 13(b) shall be permissible under the terms of this preliminary injunction, and shall not be deemed a violation thereof. Subject to the foregoing, the prices which the defendant shall charge its customers for fuel oil Number 2 shall be solely a matter of defendant's business judgment. This injunc-

cation for any discounts offered in order to meet competition will remain on WPP, as provided by the statute.

WPP also has attempted to raise two alleged evidentiary errors which it failed to preserve for our review because of its failure to include them in its objections to the recommended ruling. Because these issues are likely to arise again during the trial on the merits, we shall comment on them briefly. The first involved the admission as an exhibit of a list of customers whom plaintiff John B. Hull, Inc. allegedly lost to WPP. This exhibit presents a close question of admissibility even under the liberal criteria of Fed.R.Evid. 803(6), as it appears to be a list compiled under the special circumstances of WPP's price cut rather than a record kept as a "regular practice" of the plaintiff's business. The second objection concerned the qualifications of the plaintiffs' expert witness. The record suggests that he was adequately qualified to give expert testimony under Fed.R.Evid. 702. The weight to be given his testimony of course remains for the trier of fact to determine.

The order of the district court is modified and, as modified, is affirmed.

tion mandates full compliance with Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act on the part of Waterbury Petroleum Products, Inc. . . .