**LUZERNE & LACKAWANNA SUPPLY CO., Plaintiff,**

v.

**PEERLESS INDUSTRIES, INC. and R.J. Walker Co., Inc., Defendants.**

**Civ. A. No. 3:CV–93–0348.**

United States District Court, M.D. Pennsylvania.

April 1, 1994.

Henry C. McGrath, Scranton, PA, Patrick T. Ryan, Michael O'S. Floyd, Paul H. Saint-Antoine, Drinker, Biddle & Reath, Philadelphia, PA, for plaintiff Luzerne and Lackawanna Supply Co.

Ernest D. Preate, Sr., William T. Jones, Levy & Preate, Scranton, PA, Eugene C. Fish, Romeika, Fish & Scheckter, Patrick T. Davish, Alan Davis, Ballard, Spahr, Andrews & Ingersoll, Carl W. Hittinger, Philadelphia, PA, for defendant Peerless Industries, Inc.

Joseph T. Wright, Jr., Robert Patrick Casey, Jr., Frank J. McDonnell, McDonnell, O'Brien & Wright, Scranton, PA, Samuel E. Klein, Jeffrey W. Soderberg, Dechert, Price & Rhoads, Philadelphia, PA, for defendant R.J. Walker Co., Inc.

John R. Lenahan, Jr., Lenahan & Dempsey, Scranton, PA, for mediator.

## MEMORANDUM

RAMBO, Chief Judge.

Plaintiff brings the captioned action alleging that Defendant Peerless has engaged in price discrimination and other unlawful activities in favor of defendant Walker and against Plaintiff, and that Defendants conspired to eliminate Plaintiff as a competitor. Before the court are Defendants' motions for partial summary judgment on Counts II, III, and IV of the complaint.

### Background

The following facts are undisputed by the parties. Plaintiff Luzerne and Lackawanna Supply Co. ("L & L") is a Pennsylvania corporation with its principal place of business in Wilkes-Barre, Pennsylvania. (Statement of Material Facts ("SMF") at ¶ 3.) Defendant Peerless Industries, Inc. ("Peerless") is a Pennsylvania corporation with its principal place of business in Boyertown, Pennsylvania. (Id. at ¶ 1.) Defendant R.J. Walker Co., Inc. ("Walker") is a Pennsylvania corporation with its principal place of business in Scranton, Pennsylvania. (Id. at ¶ 2.)

Walker and L & L both purchase products, particularly residential boilers, from Peerless. Plaintiff alleges that it has received unfavorable pricing, terms and services by Peerless, compared to Walker, and that such conduct is actionable pursuant to the Clayton, Sherman and Robinson-Patman Acts. (Compl. at ¶¶ 1, 9–11.) It further alleges that defendant Walker, beginning in 1989, devised a plan to eliminate Plaintiff as a competitor in the wholesale boiler business in Northeastern Pennsylvania. (Id. at ¶ 13.) To that end, it entered a conspiracy with Peerless precipitating this lawsuit. (Id. at ¶¶ 13–14.)

Before the court are two motions for summary judgment, one by defendant Peerless, for summary judgment on Counts II and III, and one by defendant Walker, for summary judgment on Count IV. Both contend that this court has no jurisdiction over Plaintiff's claims under to §§ 2(a) and (e) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. §§ 13(a) and (e), since none of the pertinent transactions took place in interstate commerce, as statutorily required.

### Discussion

### I. Summary Judgment Standard

■ The court will consider this motion under the accepted standards for the award of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The United States Court of Appeals for the Third Circuit has recently summarized those standards in a concise and helpful way:

Summary judgment may be entered if "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,[248,] 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark*

*Comm. Finance Co. v. C.I.T. Financial Serv. Corp.,* 812 F.2d 141, 144 (3d Cir. 1987). If the evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson,* [477 U.S. at 249,] 106 S.Ct. at 2511; *Equimark,* 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir.1987). The parties' burdens in summary judgment may be described in the following way: Once the moving party has shown an absence of evidence to support the claims of the nonmoving party, the nonmoving party must do more than simply sit back and rest on the allegations of the complaint. She must "go beyond the pleadings and her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the nonmovant bears the burden of persuasion at trial, "the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden at trial." *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.1987).

## II. Counts II and III

█ In Count II, Plaintiff alleges that Peerless engaged in price discrimination against Plaintiff, and in Count III, that Peerless discriminated in its provision of services in connection with its sales of boilers to Plaintiff. (Compl. at ¶¶ 21–24, 26–29.) Plaintiff brings Counts II and III under §§ 2(a) and (e) of the Clayton Act, as amended by the Robinson–Patman Act, 15 U.S.C. §§ 13(a) and (e). Section 2(a) provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such are in commerce, ... where the effect of such discrimination may be substantially ... to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination.

15 U.S.C. § 13(a). To prevail under this section, a plaintiff must show that the subject commodities were within commerce, that is, that they crossed state lines. As this court has previously stated:

The initial requirement that must be met in § 2(a) claims is that the person be engaged in commerce. It is well settled that the scope of the definition of "in commerce," as used in § 2(a) of the Clayton Act is much more limited than the scope applied in Sherman Act cases. The "in commerce" language of § 2(a) requires that at least one of the alleged discriminatory transactions occurs "in" commerce, rather than merely have an "effect upon" commerce.

To establish the "in commerce" requirement in order to plea a prima facie case under § 2(a), one is required to allege, and support if challenged,

1. That the alleged discriminatory seller must be "engaged" in commerce, such that his business activities, in fact cross state lines. *Brosious v. Pepsi-cola Co.,* 155 F.2d 99 (3d Cir.1946).

2. That the alleged discrimination must have occurred in the course of such commerce; the mere fact that the seller is engaged in commerce is not enough, the alleged violation must arise out of the interstate aspect of the seller's business. *Moore v. Mead's Fine Bread Co.,* 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145 (1954), *reh'g denied,* 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1955).

3. That either or any of the purchases that allegedly are discriminatory must be in interstate commerce. It is not enough that goods moved from one state to another, the sale of the specific goods in question must cross state lines.

*Country Maid, Inc. v. Haseotes,* 324 F.Supp. 875 (E.D.Pa.1971).

*R.S.E., Inc. v. Pennsy Supply, Inc.,* 489 F.Supp. 1227, 1232 (M.D.Pa.1980) (citations omitted).

Section 2(e) provides:

It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

15 U.S.C. § 13(e). This court has held that the interstate requirements for § 2(a) claims equally apply to claims brought pursuant to § 2(e) of the Act. *Id. See also L & L Oil Co. v. Murphy Oil Corp.,* 674 F.2d 1113, 1116 (5th Cir.1982); *Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 882 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983).

Peerless, Walker and L & L Supply are all located in Pennsylvania. (Compl. at ¶¶ 4–5, 7.) Peerless has submitted evidence that none of their sales to either Walker or Plaintiff have crossed state lines. (D. Levengood Aff. at ¶¶ 7–9.) Moreover, all Peerless boilers sold to either Walker or L & L were delivered either to their respective offices, both in Pennsylvania, or to specified locations, all within the Commonwealth. (*Id.* at ¶ 8.) Plaintiff presents no evidence to rebut this. However, Plaintiff has set forth several theories that purportedly establish the interstate nature of the dispute at hand.

## A. Sale of Boilers Outside the Commonwealth

■ Plaintiff avers that it has sold boilers outside Pennsylvania and that this provides the requisite interstate link to impose liability on Defendants. Specifically, it points to three sales of Peerless boilers outside the Commonwealth. Plaintiff contends that these sales did not breach the flow of commerce and therefore that the boilers sold by Peerless and eventually ending up out-of-state satisfies the interstate element requisite for jurisdiction.

The stream of commerce theory was first enunciated in *Standard Oil Co. v. FTC,* 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239 (1951), which held that an interstate distributor's storage of goods within a state did not remove those goods, later sold intrastate, from the flow of commerce so as to destroy the interstate element necessary for jurisdiction. *Id.* at 237–38, 71 S.Ct. at 243–44.

Defendant contends that the stream of commerce theory is not applicable under these circumstances since the alleged discrimination was not part of the interstate aspect of the transaction. Plaintiff, in opposition, points to *L & L Oil Co. v. Murphy Oil Corp.,* 674 F.2d 1113 (5th Cir.1982). In that case, a buyer bought oil from a seller, who allegedly violated §§ 2(a) and (e) of the Act, for specific needs of the buyer's customers. The seller's sale to the buyer was clearly intrastate. However, the buyer's sale to customers was unquestionably interstate. The plaintiff argued that this constituted the requisite interstate element necessary for liability; the court agreed. *Id.* at 1116. The court cited to three situations, set forth in *Hampton v. Graff Vending Co.,* 516 F.2d 100, 102–103 (5th Cir.1975), exemplifying when goods and services remain in the "flow of commerce:"

(1) Where the goods are purchased by the wholesaler or retailer upon the order of a customer with the definite intention that the goods are to go at once to the customer;

(2) Where the goods are purchased to meet the needs of specified customers pursuant to some understanding with the customers, although not for immediate delivery; and

(3) Where goods are purchased based upon the anticipated needs of specific customers, rather than upon prior orders of contracts.

*L & L Oil Co.,* 674 F.2d at 1116 (quoting *Hampton,* 516 F.2d at 102–03).

Plaintiff has submitted absolutely no evidence that the factors enunciated in *L & L*

*Oil Co. v. Murphy Oil Corp.*, 674 F.2d 1113 (5th Cir.1982), are met here. Specifically, Plaintiff has failed to show that it purchased the Peerless boilers from Defendant for any of Plaintiff's three customers at their specific requests, or for their specific or anticipated needs.

Michael Holmes, Vice–President of L & L, has stated that "Somerville purchased from L & L Supply three Peerless residential boilers, which were needed to fill a customer's order in Washington, D.C." (M. Holmes aff. at ¶ 5), but failed to indicate that L & L Supply sold the boilers to Somerville upon a specific request. (*See also* D. Kelly aff. at ¶¶ 3–6.)

Similarly, Plaintiff notes it sold Bill's P & H, a Pennsylvania seller, a Peerless boiler for a Binghamton, New York customer, (K. Holmes aff. at ¶¶ 3–4), sold a Peerless boiler to John Tupy P & H, a customer in Johnson City, New York, (P. Holmes aff. at ¶¶ 3–4) and sold one to Custom Hill Homes in Belvidere, New Jersey. (*Id.* at ¶¶ 6–7.) Again, Plaintiff has failed to indicate that any of these three sales fit within the framework enunciated by *L & L Oil Co. v. Murphy Oil Corp.*, 674 F.2d 1113 (5th Cir.1982).

■ Plaintiff also contends that it has sold other Peerless products outside the state. (E. Holmes Aff. at ¶ 12.) However, as Defendants accurately point out, the court can only consider the sale of the relevant commodity in determining whether the interstate test has been met so as to impose liability under the anti-trust laws. *McCallum v. Athens*, 976 F.2d 649, 656 (11th Cir.1992); *S & M Materials Co. v. Southern Stone Co.*, 612 F.2d 198, 200 (5th Cir.1980).

In sum, the court can not conclude that Plaintiff's sales out-of-state satisfy the interstate element requisite for jurisdiction under § 2(a). Plaintiff's averments are insufficient to satisfy the interstate element required for jurisdiction under the Act. Specifically, they do not show that the allegedly discriminatory act occurred in the course of the interstate transportation of the goods in question. Rather, these facts are consistent with Defendants' argument that the alleged discriminatory conduct occurred in the course of purely intrastate dealings between Peerless and Plaintiff or Peerless and Walker, and that the interstate aspect of any dealings is wholly untainted by any discriminatory acts.

## B. Peerless' Sales Out-of-State to Plaintiff's Competitors

■ Plaintiff next argues that its competes with out-of-state businesses which sell Peerless boilers and have received favorable treatment from Defendant. To support this claim, Plaintiff must establish several elements. First, it must prove that it actually competes with out-of-state businesses. Second, Plaintiff must demonstrate that these out-of-state entities sell Peerless boilers. Finally, Plaintiff must show that these businesses received favorable treatment from Peerless in comparison with that afforded Plaintiff.

Plaintiff has presented some evidence that it sells Peerless boilers out-of-state. For example, as explained above, it has made sales to Somerville, in Washington, D.C., (M. Holmes aff. at ¶¶ 3–4) Bill's P & H, a Pennsylvania seller, for a Binghamton, New York customer, (K. Holmes aff. at ¶¶ 3–4), to John Tupy P & H, a customer in Johnson City, New York, (P. Holmes aff. at ¶¶ 3–4) and to Custom Hill Homes in Belvidere, New Jersey. (*Id.* at ¶¶ 6–7.) (*See also* E. Holmes aff. at ¶¶ 4, 6.)

Next, Plaintiff must connect these sales with competition against sellers in those regions. *R.S.E.*, 489 F.Supp. at 1232 (must show that favored customer was in competition with disfavored customer). Defendants contend that Walker is Plaintiff's only competitor of Peerless products since 1989. (Levengood Aff. at ¶ 6.) In contrast, Earl Holmes, President of L & L, states that

> L & L Supply competes with a number of other companies, both inside and outside of Pennsylvania, in the sale and distribution of heating equipment and supplies, including residential boilers.... For example, L & L Supply competes with Sage Supply, Johnson City, N.Y.; Chase Supply, Syracuse, N.Y.; Northup Supply, Binghamton, N.Y.; Triboro Supply, Vestal, N.Y.; Yaun Supply, Liberty, N.Y.; Schmidt Supply, Monticello, N.Y.; Hamburg Supply, Ham-

burg, N.J.; Louis P. Canusso Supply, Klepford, N.J.; and Kessler Supply, Patterson, N.J.

(E. Holmes Aff. at ¶¶ 8, 10.) However, Plaintiff has submitted no evidence to support these claims. It can not rely on the purported need for additional discovery, since pertinent documentation disclosing Plaintiff's competitors would be solely within the possession of Plaintiff.

Plaintiff must also show that Peerless sells to these competitors. Earl Holmes asserts that Peerless does, though no evidence is submitted to support this claim. (E. Holmes aff. at ¶ 14.) At the preliminary injunction hearing, Earl Holmes could not identify any competitors who sold Peerless products, much less any who received a lower price from Peerless. (Tr. at 8, 32.) Even at this late point, the only purported competitor which Plaintiff can name as selling Peerless boilers is Sage Supply.

Finally, Plaintiff must show that these out-of-state customers were given preferred treatment by Defendant. However, Plaintiff has not been able to determine how or even if these competitors were favored by Peerless. (E. Holmes Aff. at ¶ 15.) In its complaint, Plaintiff names only Walker as a competitor favored by Peerless. (Compl. at ¶¶ 9–10, 13, 14, 26, 31–34.) Now, Plaintiff asserts that Walker sells to Sage Supply, who benefits from Walker's favorable treatment by Peerless, and that Sage Supply is in competition with Plaintiff. (K. Holmes Aff. at ¶¶ 5–7; P. Holmes at ¶ 8.) However, as discussed above, Plaintiff has presented no evidence that it actually competes with Sage Supply. Nor has it submitted evidence that Sage Supply purchases Peerless products from Walker, as Plaintiff alleges, much less that Sage Supply benefits from the purportedly favored treatment bestowed upon Walker.

More importantly, Plaintiff has presented no legal support for its theory that Sage Supply's interstate purchase from Walker who purchased intrastate from Peerless could satisfy the interstate element, even assuming that Plaintiff could show that it competes with Sage Supply and that Sage benefits from Walker's alleged favored status. The stream of commerce theory does not support finding the interstate connection by way of Sage Supply.

Cases elaborating on the parameters of "stream of commerce" have held that the stream of commerce ceases once goods are sold to an independent distributor. *See Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 878 (9th Cir.1982)[1], *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983); *Taggart v. Rutledge*, 657 F.Supp. 1420, 1439 (D.Mont.1987), *aff'd* 852 F.2d 1290 (9th Cir.1988) (distributor with independent pricing, marketing decisions breaks flow of commerce). In considering whether the defendant was independent from the interstate distributor, the *Taggart* court considered whether the two had an exclusive supply contract, whether the distributor had control over his business practices and personnel decisions and owned his own property. *Id.* at 1440.

Plaintiff has submitted no evidence, nor even argued, that Walker is not independent from Peerless. There is no evidence relating to any of the factors enunciated by the *Taggart* court. The court, therefore, can not conclude that goods transferred from Peerless to Sage Supply remained in the flow of commerce such that the interstate nature of Walker's sale to Sage Supply could be attributed to Peerless.

Plaintiff contends that with additional discovery, it can establish this basis for finding an interstate nexus to the subject transactions. *See Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir.) (permitting further discovery and denying summary judgment), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973). However, Plaintiff has failed to come forward with evidence on a number of matters—that it actually competes with out-of-state businesses (information which would be solely within its own posses-

---

1. The court stated, "the flow of commerce ends when goods reach their 'intended' destination.... goods leave the stream of commerce when they are stored in a warehouse or storage facility for general inventory purposes, that is, with no particular customer's needs in mind." *Id.* at 878 (citations omitted).

sion), that these out-of-state entities actually sell Peerless boilers, and that these businesses received favorable treatment from Peerless in comparison with that afforded Plaintiff. Moreover, Plaintiff has failed to submit an affidavit as required under Federal Rule of Civil Procedure 56(f) which provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). Plaintiff has submitted no affidavit, or other documentation, indicating to this court the reasons why it has not been able to obtain the necessary facts to defeat summary judgment.

In sum, Plaintiff has failed to show that it competes with out-of-state customers of Peerless who receive favorable prices and/or services from Defendant. Therefore, this theory can not provide Plaintiff with the necessary interstate link for jurisdiction under §§ 2(a) or 2(e).

### C. Knockdowns

■ Finally, Plaintiff contends that Peerless receives a substantial amount of materials outside the state, some of which is sold to Plaintiff with little to no modification. (E. Holmes Aff. at ¶ 16.) Specifically, Plaintiff asserts that it purchases "knockdowns" from Peerless, unassembled boilers, the components of which Peerless obtains from outside the state and resells without alteration. (E. Holmes Aff. at ¶¶ 17, 18.)

Plaintiff theorizes that the knockdowns do not require modification at the Peerless plant and, therefore, that their arrival from out-of-state to Peerless' warehouse does not interrupt the flow of commerce.

In the case at bar, Defendant raise two arguments against the application of this stream of commerce doctrine. First, it asserts that its modification of the knockdowns sufficiently breaks the flow of commerce such that its subsequent sale of the pieces can not be considered to be interstate in nature.

Second, Defendant contends that it is not an interstate manufacturer but, rather, purchases knockdowns from out of state; thus, it is an independent seller whose purchase of the knockdowns breaches the flow of commerce. The court agrees. *Hiram Walker, Inc. v. A & S Tropical, Inc.*, 407 F.2d 4 (5th Cir.), *cert. denied*, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969) (interstate manufacturer sold to distributors who sold solely intrastate to retailers; court determined that autonomous distributors' allegedly discriminatory in-state sale outside jurisdiction of the Act).

In *Roorda v. American Oil Co.*, 446 F.Supp. 939 (W.D.N.Y.1978), an interstate petroleum company shipped gasoline to a New York company which purchased then sold, allegedly discriminatorily, to customers within the state. *Id.* at 945–46. However, the court denied summary judgment, finding that additional issues needed to be resolved at trial, namely, the precise relationship between the interstate supplier and intrastate seller, and whether the factors provided in *Hampton v. Graff Vending Co.*, 516 F.2d 100, 102–103 (5th Cir.1975) had been met. (*See supra* at II(A).)

In the captioned action, there is absolutely no evidence that Peerless has anything but a completely autonomous relationship with the interstate distributors of the knockdowns. *See, e.g., Zoslaw*, 693 F.2d at 879 (sale by interstate manufacturer to subsidiary does not necessarily stop flow of commerce). Moreover, Plaintiff has submitted no evidence that (1) Peerless purchased the knockdowns upon the order of L & L or any other customer with the definite intention that the knockdowns would be immediately delivered to the customer; (2) Peerless purchased the knockdowns to meet the needs of L & L or any other customer pursuant to some understanding with that customers, although not for immediate delivery; or (3) Peerless purchased the knockdowns based upon the anticipated needs of L & L or any other specific customer. *Hampton*, 516 F.2d at 102–03. Plaintiff contends that additional discovery is warranted to determine if Peerless pur-

chased the knockdowns pursuant to a specific order from L & L Supply. *See Littlejohn,* 483 F.2d at 1146. In *Roorda v. American Oil Co.,* 446 F.Supp. 939, 945 (W.D.N.Y. 1978), the court, denying summary judgment, held that the plaintiff should be provided with an opportunity to prove at trial that the interstate distributor's intrastate sales remained within the stream of commerce. *Id.* at 945. However, in that action, there was a substantial basis for speculating that the goods in question—petroleum—remained in commerce since the interstate distributor defendant merely stored the gasoline within one state and later sold it also within that state. *Id.* In contrast, in the case at bar, Plaintiff has provided no facts, but just mere speculation, that Peerless' boilers remained in interstate commerce.

In sum, even assuming that the knockdowns did not undergo modification, no evidence has been presented that any of the factors are present which would indicate that the flow of commerce was not broken upon Peerless' purchase of the knockdowns.

### D. Conclusion

None of Plaintiff's three theories satisfactorily establish that either Peerless' sale of boilers to L & L Supply or Walker were made within interstate commerce so as to permit this court's exercise of jurisdiction under the Clayton Act. Therefore, in the absence of jurisdiction, the court will grant Peerless' motion for summary judgment on Counts II and III.

### III. Count IV

■ In Count IV, Plaintiff alleges that Walker has violated § 2(f)[2] of the Act, in that Walker has knowingly induced and/or received discriminatory prices from Peerless. (Compl. at ¶¶ 31–34.) Defendant Walker seeks summary judgment against Plaintiff, also on the basis that the "interstate" requirement for jurisdiction under the Act is lacking.

Case law has established that the interstate requirement necessary for liability under § 2(a) of the Act is similarly required for liability under § 2(f) of the Act. In fact, if a § 2(a) case against the seller can not be established, a claim against a buyer pursuant to § 2(f) can not be established. *Great Atlantic & Pacific Tea Co. v. Federal Trade Comm'n,* 440 U.S. 69, 76–77, 99 S.Ct. 925, 931, 59 L.Ed.2d 153 (1979) ("Under the plain meaning of § 2(f), therefore, a buyer cannot be liable if a prima facie case could not be established against a seller or if the seller has an affirmative defense.... The legislative history of § 2(f) fully confirms the conclusion that buyer liability under § 2(f) is dependent on seller liability under § 2(a)."). Because Plaintiff has failed to establish a prima facie case that defendant Peerless violated §§ 2(a) and (f) of the Act, it can not prevail against Walker. Therefore, the court will grant defendant Walker's motion for summary judgment. An appropriate order will be issued.

### *ORDER*

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED:**

(1) Plaintiff's motion to file a surreply brief is **GRANTED.**

(2) Defendant Peerless' motion for summary judgment on Counts II and III is **GRANTED.**

(3) Defendant Walker's motion for summary judgment on Count IV is **GRANTED.**

(4) The clerk of court shall defer the entry of judgment until the close of this case.

**2.** Section 2(f) of the Act provides:
It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.
15 U.S.C. § 13(f).