**UNITED RETAIL INCORPORATED, f/k/a Sizes Unlimited, Inc./Smart Sizes, Plaintiff,**

v.

**MAIN STREET MALL CORP., Defendant.**

**No. 95 CV 8765 (BDP).**

United States District Court, S.D. New York.

Oct. 31, 1995.

Lewis J. Campanella, Ciovacco & Campanella, East Meadow, NY, for Plaintiff.

Robert J. McGoey, New Rochelle, NY, for Defendants.

**MEMORANDUM DECISION AND ORDER**

PARKER, District Judge.

This is a motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65 enjoining the Main Street Mall Corporation from shutting down and discontinuing services to the New Rochelle Mall.

The following facts are essentially undisputed for purposes of this motion. Plaintiff,

United Retail Incorporated, f/k/a Sizes Unlimited Inc./Smart Sizes ("United Retail"), a retailer of women's clothing and accessories, operates approximately 600 stores throughout the United States. Since February 1, 1985, it has been operating a store in the New Rochelle Mall ("the Mall"). At that time, United Retail, as tenant entered into a lease agreement with ILJ associates, as landlord, for a fixed term of twelve years. In early 1993, Defendant Main Street Mall Corporation ("Main Street") acquired a large ownership interest in the Mall and assumed obligations as landlord under the Lease. The Mall comprises approximately 500,000 square feet; 250,000 feet are designed to accommodate 102 small retail stores, and another 250,000 feet are laid out to house one large department store ("the anchor store"). The Lease term is scheduled to expire on May 30, 1997. The Lease covers United Retail's one store which occupies approximately 3,908 square feet of the 500,000 foot mall.

The Macy's department store had been the anchor store at the Mall until November 1992 when it closed its doors. Since then, the Mall has been in extremely weak financial condition. Currently, only fourteen of the 102 retail spaces are occupied, and of those, only three are making current rental payments. Consequently, Main Street decided to rebuild the Mall.

In December, 1994, Main Street announced its intention to redevelop the Mall in public meetings with New Rochelle's City Council. In his affidavit, United Retail's Vice President, Alan Jones ("Jones"), claimed that in January, 1995, he learned of the possibility that the Mall would close. Consequently, in February 1995, he met several times with a representative of the City of New Rochelle and a Main Street representative, David Perlmutter ("Perlmutter") to look for new site locations. Additionally, he advised Perlmutter that because relocation takes six months, he would need that much notice if the Mall were to close. Perlmutter told Jones that he did not know when the Mall would close but that he would continue to operate it as long as possible to defray costs. Perlmutter also indicated that it would not terminate the Lease and wanted United Retail to continue to operate its store in the Mall. In late September 1995, Main Street formally informed United Retail by mail that services to the Mall would be discontinued and that the Mall would be closed to the public on November 1, 1995. Sometime thereafter, United Retail notified Main Street that it objected to the closing of the Mall and demanded that Main Street continue its obligations under the lease. Main Street's schedule indicates that on November 1, 1995 it will begin to fence off the Mall and its surrounding space and that construction will begin in May, 1996. On October 12, 1995, United Retail filed its complaint against Main Street seeking, damages, attorney's fees and specific performance. On October 17, 1995, it filed motion for a preliminary injunction restraining and ultimately enjoining Main Street from closing the Mall. At oral argument the parties agreed that United Retail's motion for a preliminary injunction could be resolved on the written submissions on the motion.

### DISCUSSION

"A preliminary injunction is an extraordinary remedy that should not be granted as a routine measure." *JSG Trading Corp. v. Tray–Wrap Inc.*, 917 F.2d 75, 80 (2d Cir. 1990). The standards for obtaining a preliminary injunction are well established in this Circuit. The party seeking a preliminary injunction must show (a) that it is likely to suffer irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. See, e.g. *American Postal Workers Union AFL–CIO v. United States Postal Service*, 766 F.2d 715, 721 (2d Cir. 1985), *cert. denied*, 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986).

To establish irreparable harm, plaintiff must demonstrate "an injury that is neither remote nor speculative but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969 (2nd Cir.1989). The propriety of injunctive relief also de-

pends in part upon the nature of the rights being enforced. In the contract setting, injunctive relief is the exception and not the rule. *U.S.A. Network v. Jones Intercable, Inc.,* 704 F.Supp. 488 (S.D.N.Y.1989); *Litho Prestige v. News America Publishing,* 652 F.Supp. 804, 809 (S.D.N.Y.1986). This is so because the injury must be one requiring a remedy of more than mere money damages.

United Retail claims that its injury would be irreparable because it would destroy its business. A threat to trade or business viability may constitute irreparable harm. See *Roso–Lino Beverage Distributors Inc. v. Coca–Cola Bottling Co.,* 749 F.2d 124, 125–26 (2d Cir.1984) (damages cannot fully compensate husband and wife for loss of years and effort and livelihood); *John B. Hull Inc. v. Waterbury Petroleum Products Inc.,* 588 F.2d 24, 28–29 (2d Cir.1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979) (possibility of going out of business may be irreparable harm); *Semmes Motors Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir.1970) (loss of right to continue business may support claim of irreparable injury). Such threats are typically found to be irreparable in cases where defendant's actions are likely to wipe out plaintiff's entire operation.

United Retail has made no suggestion that its pecuniary loss would, for example, jeopardize its solvency or require substantial changes in company operations. As noted above, the United Retail store at the Mall is just one of six hundred owned by plaintiff. Moreover, plaintiff does not dispute Main Street's contention that United Retail opens or closes one or two stores every month of the year or that United Retail is able to locate, construct, stock and open one of its stores using its own in house resources, in the space of approximately ninety days or less.

Instead, United Retail has emphasized that the closing of the Mall will cause the loss of goodwill. Principally, United Retail maintains that its customers will not know where the store will be relocated, will not have a nearby store of United Retail's to go to and will develop a relationship with United Retail's competitors. The Court is not con-vinced that the loss of goodwill here is sufficiently substantial to establish irreparable harm. See *USA Network,* 704 F.Supp. at 492 ("almost every contract breach will generate some consequential damages that are difficult to calculate"). Nor are we convinced that keeping a dilapidated, largely abandoned Mall open for the next few months will preserve plaintiff's customer base.

As plaintiff has failed to establish irreparable harm, the court need not examine the second prong of the preliminary injunction standard.

## CONCLUSION

For the foregoing reasons, Plaintiff's application for a preliminary injunction is denied.